24 BROAD STREET CORPORATION, PLAINTIFF, v. HELEN H. QUINN, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided April 1, 1952.

22

*Mr. Sidney Finkel,* attorney for the plaintiff.

*Messrs. Mylod and Mylod (Mr. James P. Mylod* appearing), attorneys for the defendants.

STEIN, J. S. C. Plaintiff is the lessee named in a written lease made in June, 1946, by which the defendant Helen H. Quinn (now deceased) demised to the plaintiff certain lands and building at 24 Broad Street, Bloomfield, New Jersey, for a term of 21 years, beginning July 1, 1946, and ending June 30, 1967, at midnight. This lease will be herein referred to as the main or basic lease. During the pendency of this action the lessor, Helen H. Quinn, died, and upon order of this court her devisee, John Healy Quinn, and also the executors of her will were brought in as substituted defendants and the action thereupon stood revived.

The lease called for an annual rental of $2,700 for the first four-year period (now passed) and an annual rental of $3,600, payable in monthly installments of $300, for the last 17 years of the term.

The major controversy herein arises from the conflicting interpretations given by the parties to the eighth paragraph or section of the lease, which reads as follows:

"8. The tenant covenants and agrees, as a special inducement to the landlord to make and execute this lease, to remove the building now erected upon the demised premises and shall and will at its own cost and expense erect or cause to be erected thereon and completed within five (5) years from the commencement date of this lease; to wit on or before June 30th, 1951, a building herein sometimes called the 'new building' which said building, including the store fronts, shall have a cost for the construction thereof of not less than the sum of Twenty Thousand Dollars ($20,000.00). The building so to be constructed shall be in accordance with plans and specifications that shall first be submitted to the landlord. Receipted bills, supported by an affidavit of an officer of the tenant authorized by resolution of the tenant to make said affidavit that said receipted bills totaling Twenty Thousand Dollars ($20,000.00) or more as the construction cost of said new building were bonafidely incurred, and further supported by the cancelled checks paid by the tenant or its under-tenant for the construction work done, whether such work was done by the tenant or any under-tenant for the benefit of the tenant, shall be conclusive evidence of the cost for the construction of said new building.

The tenant further covenants and agrees that if it does not erect and complete a new building on the demised premises within five (5) years from the commencement date of this lease, whether such failure to erect and complete a new building on the demised premises within the five (5) year period hereinmentioned is due to government prohibition, regulations or priorities in obtaining materials or for any reason whatsoever, then the sum of Six Thousand Dollars ($6,000.00) deposited by the tenant with the landlord, as provided for in Paragraph twenty-one (21) hereof, shall immediately be and become the property of the landlord and shall belong to and be retained by the landlord, free from any claim whatsoever on the part of the tenant, and the tenant shall thereupon be released and discharged from its obligations to erect a new building on the demised premises, and all the other terms, conditions, covenants and agreements in this lease contained shall continue in full force and effect, except that the annual rental of $3,600.00 shall be increased to $4,000.00, as provided in Paragraph three (3) (b) of this lease for the remaining sixteen (16) years of the term hereby granted."

A fuller understanding of the controversy requires that section 21 of the lease be here set forth:

"21. As a further inducement to the landlord to make and execute this lease, the tenant has contemporaneously herewith deposited with the landlord the sum of SIX THOUSAND ($6,000.00) DOLLARS, the receipt whereof is hereby acknowledged, as security and pledge for the faithful performance of the covenant on the part of the tenant to construct and erect or cause to be erected and completed, a new building within the time and in strict accordance with all of the terms, conditions and provisions of paragraph 8 hereof. If the tenant fails to comply with the terms, covenants and provisions of paragraph 8, the said sum of SIX THOUSAND ($6,000.00) DOLLARS deposited hereunder shall be considered as additional rent over the twenty-one year term hereby granted and shall belong to the landlord. Upon the compliance, however, on the part of the tenant with the terms, covenants and conditions contained in said paragraph 8, the said sum of SIX THOUSAND ($6,000.00) DOLLARS so deposited shall be returned on demand to the tenant. Interest shall be allowed the tenant by the landlord on the said deposit at the rate or rates of interest paid by the Bloomfield Savings Institution during said five year period and shall be paid to the tenant with the return of the deposit, if the tenant becomes entitled thereto. The said sum of Six Thousand ($6,000.00) Dollars deposited hereunder with the landlord shall be and the same is hereby made a lien upon the premises hereinabove described, as security in favor of the tenant for the return of said deposit as herein provided for.

In the event that the landlord fails or defaults in her obligation to return the security deposited with her, as herein provided for, the tenant shall, in addition to such other remedies to which it may be entitled in law or in equity, at its option, be credited with the rent thereafter to become due, commencing with the first of the month following the completion of such new building until the entire security fund deposited has been consumed by such credits, to the same extent as though such deposit had been in the first instance applied toward the payment of the rent to become due thereafter."

When the main lease was executed the plaintiff deposited with the lessor the sum of $6,000, as called for by the quoted section of the lease. The plaintiff, claiming compliance with those provisions, has demanded the return of the $6,000 with the stipulated interest. The defendants, claiming non-compliance with those provisions, seek to retain that $6,000 as their absolute property and assert that that sum is additional rent for the balance of the term. Yet, claiming certain

breaches hereinafter mentioned, the defendants seek to have the lease declared forfeited. Such a termination of the lease would necessarily prevent the $6,000 fund from being utilized as additional rent, for if the lease stood forfeited the tenant's right to possession would be at an end and there would be no rent. It therefore plainly appears that the retention of the $6,000 by the defendants is itself in the nature of an attempted forfeiture.

It will be observed that there is nothing in the said section of the lease, or elsewhere in the instrument, which compels the plaintiff to erect a "new" building either within the first five years of the term or at any time thereafter. The erection of such building is purely permissive, but that permission is coupled with an agreement that if the permissive right be not exercised within the first five years, the $6,000 should belong to the lessor and, further, that the rent should thereupon be stepped up from $3,600 to $4,000 per annum. If the defendants are right in their contention that a "new building" was not erected within the first five years, then the loss flowing from such non-erection is the $6,000 deposit, plus the increased rent for 17 years, such increase amounting to $6,800, making a total loss to the tenant of $12,800. If the plaintiff is right in its claim that a "new building" costing at least $20,000 was erected within those five years, then the plaintiff is presently entitled to the return of the $6,000 and stands relieved and exonerated from the $400 annual rent increase for the last 17 years of the term granted. The facts found by me from the proofs are few and quite simple. Well within the first five years the plaintiff did erect and construct upon the demised lands a building costing more than twice the minimum fixed in the eighth section of the lease. That work was done at an actual cost of $47,539.46. It matters not that this large expenditure came almost entirely from the purse of Siems Candy, Inc., a sub-tenant to whom the plaintiff sublet the premises for the term commencing December 1, 1948, and ending June 30, 1967. The main lease provides that the plaintiff would

"at its own cost and expense erect or cause to be erected" the building in question. That clause itself indicates that the plaintiff itself was not required to perform the work of erection but that it could cause or procure anyone else to do so. Nor is it of any concern to the defendants that the plaintiff itself did not directly pay the funds out of its own treasury but that such payment was made by the sub-tenant, Siems Candy, Inc. It is fair to assume that the sub-tenant's expenditure in building the structure was somehow reflected in a rent lower than that which would have been charged if the cost had in the first instance been borne by the plaintiff. In reality, it is the plaintiff who paid for the building.

I find from the proofs that the building cost over $47,000, and from the photographs before me it is clear that the work constituted a major building operation. It is true that in the erection of the building about 20 per cent of the old building was retained and re-enforced but that 80 per cent of the final product constituted new construction and consisted of new materials. A part of the new construction consisted of an entirely new additional extension, of substantial size, erected in and attached to the rear part of the old building. The defendants' proofs indicate that the former building was over 100 years old and was constructed of wood. The evidence satisfies me that the building erected by the plaintiff and its sub-tenant is modern and substantial.

What did the parties mean when in the eighth section of the lease the structure to be erected by the tenant was referred to in the following language: "a building herein sometimes called the 'new building' which said building, including the store fronts, shall have a cost for the construction thereof of not less than the sum of Twenty Thousand Dollars ($20,000.00)"? Did the parties intend that the building, if erected by the tenant, should be built wholly of new materials, even to the removal of the foundations, or did they use the phrase as in common parlance and meaning that the building would be so different and improved in character as to become a decidedly different building and

substantially new in identity? Inasmuch as the defendants' interpretation carries with it heavy forfeitures and loss to the plaintiff, it is the duty of the court to construe the words strictly against the threatened forfeiture and liberally in favor of the plaintiff's rights here threatened.

The determination whether a construction job produces no more than an alteration or amounts to the erection of a substantially new structure is often a perplexing problem. It was considered in at least two cases in our own reports. In *Combs v. Lippincott*, 35 *N. J. L.* 481 (*Sup. Ct.* 1872), the question for decision was whether the plaintiff was entitled to maintain a mechanic's lien claim for work which the defendant insisted did not amount to the erection of a new building. Under the then existing statute plaintiff was without such lien if the building were not a new one but only an alteration or repair job. On the facts there present the court held that the work performed merely restored an old building to its former condition and only altered the interior arrangement. The facts in that case are vastly unlike those present in the instant matter. That case is, however, controlling for the principle of law there expressed. The court there held that a building may be so altered in plan, structure, dimensions and general appearance "as to become, in a fair sense, and according to the common understanding of men, another building—a new building—an *erection*, in the sense of our lien law, *although some portion of the old materials* may remain in it." (Italics mine.)

The *Combs* case became the underlying authority for the later decision in *Delione v. Commissioners*, 55 *N. J. L.* 108, 25 *A.* 274 (*Sup. Ct.* 1892). There the plaintiff in *certiorari* had been convicted of violating a city ordinance forbidding the erection of wooden buildings within a stated area. The facts there showed that the work consisted of slightly moving a one-story attic building, taking out the front and putting in a new one, extending the lower story about seven feet and raising the roof by three or four feet, and extending the second story so that it projected about three feet beyond

the lower story. The work also included the addition in the rear of a one-story kitchen 10 x 12 feet in dimension. The lower court held that this constituted the erection of a new building and quoted from the language of *Combs v. Lippincott, supra*. The Supreme Court, in confirming the conviction, said:

"The same idea, of making the common understanding the test for distinguishing between the mere reparation of an old building and the construction of a new building out of an old one, seems to be adopted in Pennsylvania, where the subject has received frequent examination. Thus, in *Armstrong v. Ware*, 20 *Pa.* 519, it was said that where the structure of a building is so completely changed that, in common parlance, it may be properly called a new building or a rebuilding, it comes within the lien law, as a 'building erected'; and this form of expression was quoted with approval in the recent case of *Hancock's Appeal*, 115 *Pa. St.* 1. The subject is, perhaps, incapable of being defined more precisely, and at the same time practically.

Applying this rule to the circumstances of the present case, I think the judgment of the police justice may be justified with reference to the main building. Considering the change in position, the new front, the increased width, the greater elevation, the different internal arrangements necessitated thereby, and the great alteration in outward appearance resulting therefrom, the structure might, according to common understanding, in common parlance, be called a new building."

I have found no cases in this State which in any way conflict with the holdings in the two New Jersey cases last cited. The *Delione* case is particularly impressive, since it involved a criminal conviction of the one who erected the building and he was therefore entitled to every reasonable doubt both on the facts and on the law. The affirmance of that conviction carries with it by necessary implication the idea that there could be no reasonable doubt that the alterations there made produced a different or new building. If that be the rule when the question arises in a criminal proceeding, how much more so here, in a civil action, where the evidence clearly shows that before the construction work was performed the existing wooden building was over 100 years old, was in a dilapidated condition, and was worth only

several thousand dollars; that in the new construction work there was spent over $47,000 and that the building thereupon became worth at least $40,000; and that in the doing of that work about 80 per cent of new materials were used. I therefore hold that the building here in question became so vastly different from the building replaced that it constituted a new building in the ordinary understanding and common parlance. It need only be added that the term "new building" was used by the parties in no strictly technical sense but as one of ordinary conversation. Had the lessor intended to bargain for a new building in the strictly technical sense of the term, it would have been a fairly simple matter to have provided that the "new building" shall be one built wholly of new materials. The omission so to do emphasizes the applicability of the tests laid down in the two New Jersey decisions above discussed.

 The defendants seek to enforce the forfeiture of the leasehold estate itself on the claim that the sublease to the candy company constituted an assignment of the lease and therefore a breach of the covenant against assignment. The defendants furnish and the court recognizes the long-established rule that if a sublease be for the whole term of the basic lease or for a greater period, there is in effect an assignment and not a subletting. The main lease here permits a subletting, but it is to be observed that in defining the subletting permitted under the lease (section 2 thereof), it is stated that the "sub-letting shall not extend beyond the term of this lease, to wit: June 30, 1967 * * *." Thus the lessor herself by the express language of her grant recognized and sanctioned any subletting for any term not extending beyond the terminal date of the main lease. The sublease here meets the test and sanction furnished by the lessor. It expires on June 30, 1967, the same day in which at midnight the underlying lease expires. It would be shockingly unfair to construe the duration of the sublease as amounting to an assignment productive of a forfeiture of a long-term leasehold estate and of the building erected at such large expense, when

the lessor herself expressly sanctioned and approved subleases of such duration.

■ The defendants seek to enforce the like forfeiture because the sublease was assigned by the plaintiff to a bank, the assignment being as collateral security for a bank loan. This attempted forfeiture is sought to be rested upon that covenant and condition expressed in the sixth section of the lease which provides that without the landlord's consent the tenant "Shall not assign or transfer this lease * * *." The provision is limited to the main lease; it cannot possibly relate to subleases. This is not even a strict construction to prevent an unjust forfeiture but the construction given by the court appears from the plain and simple meaning of the words used.

Other things are contended for by the defendants to accomplish the forfeiture. None is of any merit or substance. The facts in this case forbid the unjust enrichment which would flow from the attempted forfeiture, if permitted.

The relief prayed for by the plaintiff will be granted and a judgment in accordance therewith entered in favor of the plaintiff and against the defendants. According to the provisions of the 21st section of the lease the plaintiff is entitled to interest on the $6,000 deposit, at the rate or rates of interest paid by the Bloomfield Savings Institution during the five-year period. Inasmuch as the building was erected within the five years but the return of the deposit has been refused, interest will be allowed up to the date of the entry of the judgment. If the parties cannot agree on the rates paid by the Bloomfield Savings Institution, the court will fix a day for proof on that question. Present judgment on notice.