Mollie Adams FOSTER et al., Appellants,

v.

L. M. S. DEVELOPMENT CO. et al.,
Appellees.

No. 15775.

Court of Civil Appeals of Texas.

Dallas.

April 14, 1961.

Rehearing Denied May 12, 1961.

388

Witts, Geary, Hamilton, Brice & Lewis, Jim K. Choate, W. S. Barron, Jr., and John B. Stigall, Jr., Dallas, for appellants.

Locke, Purnell, Boren, Laney & Neely, Carrington, Johnson & Stephens, Shank, Dedman & Irwin, and Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellees.

DIXON, Chief Justice.

On March 13, 1959 this action seeking cancellation of a long-term lease contract on downtown Dallas property was brought by appellants as lessors against appellees as lessees. The action was also for damages for the alleged wrongful withholding of possession of the property following cancellation.

The original lessors were Harry Foster, who died in 1949, and Mollie Adams Foster, then the wife and now the surviving widow of Harry Foster. Harry Foster left a will giving his one-half community interest in the title to the real estate in question to his two children, Paul Foster and Pola Foster Craft, Jr., now Mrs. Pola Foster Dean. To his sister-in-law, Bertha Adams, now Mrs. Bertha Adams Marshburn, along with his two children, Foster gave his one-half community interest in the net rental income from the property. Robert J. Dean, husband of Pola Foster Dean, and Vernon Marshburn, husband of Bertha Adams Marshburn, are parties to the suit. Texas Bank and Trust Company is a party to the suit as trustee for Mollie Adams Foster. The relatives of Harry Foster and the Bank as trustee are appellants in this appeal.

The appellees are H. Edward Smith, a vice-president of the Mercantile National Bank at Dallas, Mercantile Security Life Insurance Company, a corporation, L. M. S. Development Company, a corporation, and Mercantile National Bank at Dallas as trustee, said Bank being named as trustee in the deed of trust securing Equitable Life Insurance Society of the United States, holder of a $4,000,000 mortgage against the leasehold estate. The latter company will hereafter be referred to as Equitable.

In addition to the $4,000,000 first lien indebtedness held by Equitable there were two second lien notes each in the amount of $1,058,600.85 outstanding at the time suit was filed, said notes being dated September 26, 1958, both notes payable September 26, 1959, one of them payable to Neely G. Landrum, the other to John B. Mills.

Neither Equitable, nor Neely G. Landrum, nor John B. Mills is a party to this suit.

The lease dated October 1st, 1947 was for a term of 99 years and provided for rental

payments of $833.33 per month. Lessee was also required to pay taxes and insurance. Section Six of the lease further provided that Lessee on or before July 31, 1956 should do one of two things: either (1) spend not less than $30,000 improving the two-story building then located on the premises, or (2) raze the old building and construct a new building to be completed by the above named date.

It is the contention of appellants as lessors that appellees as lessees had neither spent as much as $30,000 on the old building by July 31, 1956, nor had they completed a new building by that date; but that by fraudulent means they concealed their breach of the contract until they had completed a modern 19-story office building in 1958, which building rested on several tracts of land, including the tract in controversy.

In reply appellees allege that (1) the agreement in Section Six is a covenant, not a condition, hence breach of it could not result in a forfeiture of the lease; (2) the express provisions of the lease bar any recovery by appellants because (a) there has been and would have been litigation concerning the lease at all relevant times, (b) the construction of the office building, though it was not completed by July 31, 1956, was performance of Section Six and cured any breach, (c) there were liens in existence at all relevant times; (3) appellants by accepting rent for almost two years after the alleged breach and by standing idly by while appellees spent several million dollars constructing an office building on the property, have waived the alleged breach and are estopped from asserting the breach; (4) there was no fraud as a matter of law and as a matter of the undisputed evidence; and (5) there was no breach of the contract as a matter of law and as a matter of undisputed evidence.

In the course of a lengthy trial 67 special issues were submitted to a jury which returned answers favorable in most part to appellants. However, upon motion non ob-

stante veredicto judgment was rendered in favor of appellees, the lessees, that appellants, the lessors, take nothing.

## I. Facts.

### A. Preliminary Facts

On October 1, 1947 Harry Foster and wife Mollie Foster were the owners of property 70′ x 45′ on Commerce Street in Dallas. On said date, as lessors, they executed the lease in question with appellee H. Edward Smith as lessee. Next day Smith assigned his rights as lessee to L. M. S., Inc., a Texas corporation, in which Neely Landrum, John Mills and H. Edward Smith were the principal officers and stockholders.

Later L. M. S., Inc., was dissolved and its assets were assigned on July 3, 1953 to appellee Mercantile Security Life Insurance Company, in which Landrum, Mills and Smith, were again the principal stockholders and officers.

Still later another corporation, appellee L. M. S. Development Company was organized by Landrum, Mills and Smith, for the purpose of constructing the office building now known as Mercantile Dallas Building. The building was constructed on several pieces of property, one of which was the Foster lease herein involved. L. M. S. Development Company, by assignment dated September 1, 1958, acquired the rights of Mercantile Security Life Insurance Company in the Foster lease.

In connection with financing the construction of the office building L. M. S. Development Company on January 21, 1957 executed a deed of trust to J. D. Francis, as trustee for James Landrum and Cecil Mills, to secure payment of a note in the sum of $4,000,000. Landrum and Mills immediately assigned the note and deed of trust to Mercantile National Bank at Dallas, and the Bank advanced the money for the interim financing of the construction of the office building.

The permanent financing of the building was thereafter effectuated when on September 25, 1958 L. M. S. Development Company executed an Indenture of Mortgage and Deed of Trust dated September 1, 1958, in the nature of a long-term loan in the principal sum of $4,000,000, bearing 4½% interest to Mercantile National Bank at Dallas as trustee; and on September 26, 1958 said Indenture Mortgage secured by Deed of Trust was purchased by Equitable for a consideration of $4,000,000 cash, which was used to pay off the interim financing for the construction of the office building. Also on September 26, 1958 the two $1,058,-000 notes were executed to Landrum and Mills.

Mercantile National Bank, named as trustee in the deed of trust, was sued only in its capacity as trustee, and appears in this appeal only in its capacity as trustee.

*B. The Lease Contract*

The lease contract in controversy is 25 pages in length with numerous paragraphs and sub-paragraphs. It is much too lengthy to be copied here, but it is appropriate that we give a condensed statement of those of its provisions which are material to our decision of this appeal.

The lease is very complete and seems to us to be clear and unambiguous in its terms.

Section Six is relied on by appellants to show that they are entitled to cancel the lease. Therefore we quote material parts of the Section:

> *"Section Six. New Building or Buildings.*
>
> \* \* \* \* \* \*
>
> "All other provisions in this section to the contrary notwithstanding, lessee agrees that he, his heirs, personal representatives or assigns, will on or before July 31, 1956, do either one of two things:
>
> "A. Improve the present building on the demised premises, spending at least $30,000 for such improvements, *lessee having complete discretion as to what improvements shall be added*; or
>
> "B. Raze the present building on the demised premises, and erect in lieu thereof a new building, same to be completed on or before July 31, 1956, unless having been started in time for anticipated completion by that date there shall be delays beyond the control of Lessee, whereupon, if said building is completed with reasonable diligence, but subject to such delays beyond the control of the lessee, this Paragraph B shall be deemed to be complied with." (Emphasis ours.)

Section Seven gives lessee the right to make extensive alterations and repairs to any buildings on the premises.

Section Fourteen gives lessors or their agent access to the premises at all reasonable times for purposes of examination or inspection of the buildings and improvements on the premises.

Section Fifteen gives lessee broad rights to assign the lease or sublet the premises with or without the joinder of lessors. In event of assignment of the lease by first Lessee (H. Edward Smith) to a corporation, lessee personally shall be relieved of all responsibility under the terms of this lease "when the instrument of assignment is executed."

Section Seventeen gives Lessees the right to mortgage or encumber the leasehold estate subject to and subordinate to the terms of the lease in favor of lessors.

Section Eighteen is relied on by appellees to show that under the express provisions of the lease appellants are not entitled to cancel the lease. Therefore, we quote material parts of the Section:

> "Section Eighteen. *Default by Lessee and Rights and Remedies of Lessors in such Event.* An event of default which may lead to a cancellation of

this lease shall exist *(and there shall be no cancellation or termination of this lease prior to the expiration of the full term herein provided for excepting only in the event of a cancellation as provided for in this section), and there shall be an event of default only when the same shall occur as defined in one of the two following paragraphs, (emphasis ours)* A and B, and the four subparagraphs thereof:

"A. In the event that there is a lien outstanding against the rights, titles and interests of lessee under the terms of this instrument, securing sums advanced for the construction of any new building or buildings, improvement or improvements, provided for in Section Six hereof, or to secure any renewal or extension of any part of such indebtedness, or to finance any other or additional building or improvement on the demised premises. So long as any such lien is outstanding, then an event of default shall exist only as defined in paragraph (1) below:

"(1) The nonpayment by Lessee to Lessors of any monthly installment of rent, or the nonpayment by Lessee to Lessors of any other sum due Lessors on account of payments by Lessors of taxes or insurance premium payable by lessee, all in accordance with the terms hereof; * * *.

"(B) In the event that there is no lien outstanding against the rights, titles and interests of lessee under the terms of this instrument, securing sums advanced for the construction of any new building or buildings, improvement or improvements provided for in Section Six hereof, or to secure any renewal or extension or any part of such indebtedness, or to finance any other or additional building or improvements on the demised premises. So long as there is no such lien outstanding, then an event of default shall occur as defined

in subparagraph (2), (3) and (4) below:

"(2) A nonpayment continuing for ten days, followed by a ninety-day notice and continuing nonpayment during such ninety-day period of notice, all as provided for in subparagraph (1) hereof, shall constitute an event of default, * * *.

"(3) The failure of the lessee to comply with any other covenant, condition or agreement, provided in this instrument on the part of lessee to be performed, such nonperformance continuing for a period of at least thirty days; followed by the sending of a notice by lessors to lessee, if at their election lessors shall determine to send such a notice to lessee, which notice shall specifically set out the covenant, condition or agreement on the part of lessee which lessors assert not to be complied with, and which notice shall specify that it is the intention of lessors to cancel this lease for nonperformance of such covenant, condition or agreement, should the same not be performed within ninety days after such notice; followed by the continued nonperformance of such covenant, condition or agreement for the said period of ninety days referred to in such notice; and provided further that if during such ninety days it shall be determined that there has been no failure on the part of the lessee to fulfill said covenant, condition or agreement, *or that such failure has been cured prior to the sending of such notice, or since, then no event of default shall occur, and in the event that before the expiration of such ninety-day period lessors and lessee shall have litigation pending for determination of whether the covenant, condition or agreement has been or has not been complied with, then the event of default for noncompliance therewith shall not occur until the conclusion of such litigation.* * * *. (Emphasis ours.)

"If an event of default as defined in this Section shall occur, lessors shall have the right, at their option, immediately to cancel this lease, and upon exercise of such option by the execution, acknowledgment and filing of a notice of cancellation in the office of the County Clerk of Dallas County, Texas, the lease shall terminate and lessors shall have the immediate right to re-enter and repossess the demised premises. *If an event of default shall occur, however, and the breach of lessee which led to that event of default shall be cured before such cancellation of the lease, then no right to cancel the lease shall be based upon such breach or event of default. * * *"* (Emphasis ours.) Section Twenty-Two contains this provision:

"* * * *there shall be no right of lessors, or any one claiming by or through lessors, to terminate or cancel this lease, and there shall be no remedy involving cancellation or termination excepting only on the conditions and pursuant to the provisions of Section Eighteen of this instrument.*" (Emphasis ours.)

### C. *Subsequent Events*

Appellees made improvements on the old building prior to July 31, 1956, but it is disputed whether these improvements cost as must as $30,000. Appellees claim that they spent that much and more counting sums expended by them and sums expended by sub-tenants. Appellants contend that appellees are not entitled to credit for sums spent by sub-tenants. They further contend that even if costs for improvements made by sub-tenants are included the total costs expended are less than $30,000.

It is undisputed that the huge 19-story office building, now known as Mercantile Dallas Building, was not completed by July 31, 1956. Construction of the building was begun prior to that date and tenants began moving in sometime in 1957. However, the structure was not completed until 1958.

Appellees have never been in default in their rental payments, or in their insurance and tax payments. However, in March or April 1958 John Stigall, Jr., attorney for Texas Bank and Trust Company, Trustee, made inquiry of Hubert Johnson, attorney for appellee, L. M. S. Development Company, as to whether $30,000 worth of improvements had been made on the old building by July 31, 1956. Appellants allege that Johnson's statement in reply to Stigall was a misrepresentation of the facts and constitutes fraud. We think it is plain that there was no fraud on Johnson's part, but we shall postpone a detailed statement of this phase of the controversy until we discuss the matter in our opinion.

Robert Dean was not satisfied so he consulted Carlton Winn, an attorney. After an exhaustive study of various documents, Winn, an able and reputable lawyer, in a letter of considerable length dated April 3, 1958, advised Dean that appellants had no grounds for cancellation. In substance he informed appellants that even if appellees had not spent $30,000 in improvements by July 31, 1956, appellees had not complied with Section Eighteen of the lease and that compliance was a pre-requisite for cancellation. Winn also pointed out that by continuing to accept rental payments appellants had in effect waived the breach of the contract. At the trial Dean testified that Winn's opinion satisfied him at that time.

By September 1958 the construction of the 19-story office building was completed. The time for permanent financing had arrived. Before advancing $4,000,000 to purchase a long-term mortgage Equitable required a certificate from lessors that the terms of the lease contract had been complied with. Appellants again consulted an attorney, Robert Strauss, also an able and reputable lawyer. After consulting Strauss, Paul Foster, Pola Foster Dean and her husband Robert Dean and W. P. Metcalf,

Trust officer of Texas Bank and Trust Company, Trustee for Mollie Adams Foster, executed a certificate dated September 12, 1958 in which they, as successors to the original lessors, stated that (1) the office building constructed by L. M. S. Development Company, complied with the provisions of the lease contract; (2) that Mercantile Security Life Insurance Company, assignee of the original lessee, H. Edward Smith, was not in default with respect to any of the terms and provisions of the lease; and (3) they were aware that their certificate was to be submitted to Equitable in connection with the sale to Equitable of the $4,000,000 mortgage.

In connection with the execution of this certificate Robert Dean, in a family conference, stated that he did not believe $30,000 worth of improvements had been made on the old building prior to July 31, 1956. Nevertheless, he and the other lessors signed the certificate.

The jury found, and there is evidence to support it, that appellants continued to accept rent after they knew of the breach of the covenants in Section Six of the lease. In fact they continued to accept rental payments until March 11, 1959.

On February 26, 1959 appellants gave notice to appellees of their intention to cancel the lease contract. On March 13, 1959 they filed this suit.

In answer to Special Issue No. 4(d) the jury found that the Indenture of Mortgage and Deed of Trust of September 25, 1958 would not have been placed on the property but for the lessors certificate of September 12, 1958.

In answer to Special Issue No. 18(b) the jury also found that appellants accepted rent after they knew that the Mercantile Dallas Building had not been commenced in time for completion on or before July 31, 1956.

In answer to Special Issue No. 22(a) the jury further found that appellants observed the construction of the Mercantile Dallas Building for a substantial period of time without objection or inquiry thereto.

## Opinion

In their first six points on appeal appellants contend that they were entitled to judgment cancelling the lease because (1) the evidence and the jury verdict conclusively establish that appellees. breached the provisions of the lease and appellants acted pursuant to the cancellation provisions thereof, (2) appellees failed to perform the condition imposed in Sub-sections A and B of Section Six of the lease, performance of which constituted a condition precedent to the vesting of the full 99-year leasehold; (3) the subsequent construction of the Mercantile Dallas Building did not prevent appellants' cancellation of the lease for these reasons: (a) time was the essence of the contract, therefore the lease provisions for construction of a new building on or before July 31, 1956 was a "noncontinuing" provision which could not be fulfilled by a purported subsequent performance, (b) the provisions of Section Eighteen of the lease dealing with notice, demand and a waiting period of 90 days does not extend the time within which appellees could perform the provisions of Section Six, (c) appellees' own fraud gained for them the time necessary to complete the building before cancellation and they may not profit from their own fraud, but are estopped from asserting that completion of the building before cancellation cured their breach and prevented cancellation; (4) appellees' fraudulently created deed of trust lien to Mercantile National Bank at Dallas, Trustee, did not operate to prevent appellants from cancelling the lease; (5) appellants neither waived nor became estopped from terminating the lease; and (6) other liens created by appellees on the property do not bar appellants' right of cancellation.

We have concluded that all of appellants' first six points should be overruled.

At the outset it is to be noted that there is no claim of fraud in the procuring and execution of the lease contract. The charges of fraud arose in connection with the alleged failure of appellees to perform the conditions of the contract subsequent to its execution, and concealing from appellants by false representations the fact of their failure to perform.

It is our opinion that the lessors' agreement in Section Six to do either of two things by July 31, 1956 (to spend $30,000 improving the old building, or raze the old building and construct a new building) was a covenant not a condition. There is no reverter provision in Section Six. Quite to the contrary, Section Twenty-Two of the contract expressly provides that there shall be no remedy involving cancellation except pursuant to the provisions of Section Eighteen. The last named Section limits the grounds of cancellation to certain described "events of default", and provides the method to accomplish a cancellation if (A) there is a lien outstanding against the leasehold estate and if (B) there is not a lien outstanding. The Section expressly provides that, following notice from the lessors, lessees will be given an opportunity to cure or remedy the event of default. Under the circumstances we see no merit in appellants' contention that compliance with Section Six by July 31, 1956 was a condition precedent to the vesting of appellees' rights, or a condition subsequent which operated as an automatic forfeiture of appellees' rights.

Implied conditions are not favored in law or in equity. The promise of an obligee will be construed as a covenant unless an intention to create a conditional estate is clearly and unequivocally revealed by the language of the instrument. Hearne v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948; Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564; Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464; 15 Tex.Jur.2d 717, 722. It has long been the rule that the remedy for breach of covenant is damages, not cancellation. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472; Guinn v. Clay, Tex.Civ.App., 324 S. W.2d 254.

Time was not the essence of the contract with respect to the provisions for spending $30,000 on the old building, or constructing a new building by July 31, 1956. Any intention to make time of the essence in the performance of a contract must be clearly manifested in the contract. Manton v. City of San Antonio, Tex.Civ. App., 207 S.W. 951; 13 Tex.Jur.2d 525–527. We find no such provision in this contract. Quite to the contrary the contract expressly provides that an "event of default" may later be cured.

It is our opinion that as a matter of law appellants are not entitled to cancel the lease contract for these additional reasons:

(1) Under the undisputed evidence the construction of the office building though it was completed belatedly, constituted a substantial compliance with the contract. It is to be remembered that appellees as lessees were not required to spend $30,000 or any other sum on improvement of the old building. They could either spend the $30,000 on the old building, or construct a new building. They could do either, but they were not required to do both. They could, if they chose, spend nothing on the old building, yet comply with the terms of their contract by tearing down the old building and constructing a new building in its stead. Appellees insist that they did spend $30,000 on the old building, but even if we say, for the sake of argument, that they did not do so, they nevertheless complied with their contract by electing to tear down the old building and constructing a new building. Since time was not the essence of the contract, the completion of the building, though late, constituted substantial performance.

(2) On February 26, 1959 when appellants gave notice pursuant to the terms of

the contract of their intention to cancel the lease, there was a $4,000,000 lien outstanding in favor of Equitable, and two liens for $1,058,000 each in favor of Landrum and Mills. Under Section Eighteen A of the lease if there was a lien outstanding appellants could not cancel except on default of appellees in their rental, insurance, or tax payments. It is undisputed that there had not been any such default by appellees.

Appellants say that the mortgage lien is not valid because it was tainted by fraud, of which fact Mercantile National Bank at Dallas had knowledge, and that this knowledge by the Bank must be imputed to Equitable because the Bank is trustee for Equitable in the deed of trust.

■ In the first place we find no evidence that the mortgage is tainted by fraud, or that the Bank, as trustee, had any such knowledge. In the second place we hold that even if the Bank, as trustee, in the deed of trust, did have knowledge of the alleged fraud, such knowledge is not to be imputed to Equitable. The Bank, with knowledge of both parties, was acting as trustee for both L. M. S. Development Company, the mortgagor, and for Equitable, the mortgagee. Under such circumstances it will not be presumed that knowledge on the part of the trustee of fraud of the mortgagor will be communicated to the mortgagee, nor will such knowledge by the trustee be imputed to the mortgagee. United Association of Journeymen, etc. v. Borden, Tex., 328 S.W.2d 739 (Syl. 7); Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502, 505; First Texas Joint Stock Land Bank of Houston et al. v. Chapman, Tex. Civ.App., 48 S.W.2d 651; Standard Savings & Loan Ass'n v. Fitts, 120 Tex. 303, 39 S.W.2d 25, 26, 27; Cooper et al. v. Ford et al., 29 Tex.Civ.App. 253, 69 S.W. 487, 489; Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid Transit Co., D.C., 291 F. 863, 873.

■ (3) Appellants will not be heard to complain of appellees' alleged failure to spend $30,000 on the old building by July 31, 1956, or of their failure to complete the new building by that date, for appellants have waived and are estopped to assert such failures by (a) continuing to accept rental payments from appellees after they knew of such alleged breaches of contract, and (b) executing the certificate of September 12, 1958 demanded by Equitable before Equitable would purchase the long-term mortgage, in which certificate lessors, knowing the purpose of the instrument, certified that L. M. S. Development Company had complied with all the provisions of the lease contract.

[■ Ordinarily waiver and estoppel are fact questions, but if the evidence is undisputed as to the material facts, as they are in this case, waiver and estoppel may be established as a matter of law. Dallas Farm Machinery Co. v. Minneapolis-Moline Co., Tex.Civ.App., 324 S.W.2d 578, 581; Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, 305; 43–B Tex.Jur. 491; 31 C.J.S. Estoppel § 163 p. 461.

■ (4) Equitable, holder of a first lien of $4,000,000 against the leasehold estate and Neely G. Landrum and John B. Mills, each holders of second lien notes in the amount of $1,058,600.85 each, are not parties to this suit. Appellants claim that these notes and liens are invalid. Their validity cannot be litigated in this case without making the lien holders parties.

■ (5) Though appellees did not complete the office building by July 31, 1956, they did complete the building before appellants attempted to cancel the lease, and their belated completion of the building constituted a cure of the breach prior to cancellation under the terms of the lease.

Appellants, in an attempt to justify their failure to act sooner, say that Hubert Johnson and H. Edward Smith falsely represented to them that Section Six of the lease had been complied with in that $30,-000 had been spent on the old building

prior to July 31, 1956; and that they believed and relied on said false representations otherwise they would have undertaken cancellation of the lease sooner.

The alleged misrepresentation by Johnson, attorney for L. M. S. Development Company, is alleged to have occurred in a telephone conversation with John B. Stigall, Jr., attorney for Texas Bank and Trust Company. What Johnson told Stigall was that sometime before he had raised the question with his clients and that they had furnished him with information sufficient to satisfy him, Johnson, that the money had been expended, that he had this information in his file which was not available at the time. Stigall knew that an affidavit had been furnished to Johnson by H. Edward Smith. Later Johnson sent his file on the subject to Robert B. Dean, one of the appellants, for Dean's own study in reaching his conclusions.

 Johnson made it plain that his statement was based on information furnished to him by others, and he gave the source of the information. Fraud is not to be predicated on statements expressly represented to be made merely on information. 20A Tex.Jur. 92; 37 C.J.S. Fraud § 21, p. 259. Johnson was not one of the lessees; nor was he architect or contractor for lessees. He could do no more than pass on to others the information furnished to him by his clients. There was no fraud in his statement to Stigall or in his subsequent dealing with Dean.

Smith's fraud is alleged to consist of an affidavit he made to the effect that the $30,000 had been spent on the old building. Whether this affidavit was true or false is a fact question. Appellants say it was false, appellees say it was true.

Appellants contend that in computing the cost of the improvements it is not proper to take into account improvements made and paid for by lessees' tenants in the old building. Appellees contend that the improvements made by tenants should be included.

 We agree with appellees. Section Six, providing for the improvements says: " * * * lessee having complete discretion as to what improvements shall be added." Section Fifteen, giving broad rights to assign or sub-let, provides that a sub-lessee shall have all or any part of the rights and privileges of the lessee with reference to the use of the premises. It is no concern of lessors that lessees made arrangements with sub-tenants to make some of the improvements. Jenkins v. John Taylor Dry Goods Co., 352 Mo. 660, 179 S.W. 2d 54, 59; 24 Broad Street Corp. v. Quinn, 19 N.J.Super. 21, 87 A.2d 759.

On request of appellants the trial court in submitting the questions to the jury limited the inquiry to expenditures made by lessees themselves, excluding expenditures made by sub-tenants. Appellees objected but their objection was overruled. We think this was error.

That the matter influenced the jury is shown by the question sent by the jury to the court during their deliberations. "Does the word 'assigns' refer to L. M. S. Inc., Mercantile Securities Life Ins. Co., and L. M. S. Development Company *only* and not the sublessee such as Miles, DeVera, etc.?" The court answered the question by referring to the instruction in the charge.

In view of the fact that the issues in regard to improvements were not properly submitted we sustain appellees' cross-points Nos. 1 and 3. Consequently we must hold that there has not been a finding as to whether appellees actually spent $30,000 on the old building by July 31, 1956.

Appellants assert that even if improvements made by sub-tenants and included in the computation the testimony shows the cost of improvements was less than $30,000. In support of their position they cite us to discrepancies and duplicate entries in the accounts and vouchers. The accounts, vouchers and other exhibits pertaining to this part of the controversy are numerous,

bulky and complicated. To confirm appellants' contention we would have to resolve ourselves into a committee of auditors and carefully audit all the records. We shall not attempt to do so.

In any event, the question of whether appellees spent $30,000 in improvements prior to July 31, 1956 cannot control our decision, for as we have already pointed out, lessors after they had ceased to believe lessees, continued to accept rental payments, and on September 12, 1958 executed certificate to the effect that all provisions of the lease had been complied with. By reason thereof lessors have waived their right to cancel the lease, and are now estopped to do so on the grounds they assert.

Appellants' first six points on appeal are overruled.

In their seventh point appellants complain of the judgment denying them actual and punitive damages and failing to require appellees to pay off and discharge the outstanding liens against the leasehold estate. The actual damages sought by appellants were for the alleged withholding of possession of the property following cancellation of the lease. Since we have held that appellants had no right to cancel the lease it follows that they were not entitled to recover the damages they sought, and were not entitled to have the liens discharged. Their seventh point is overruled.

Appellants' eighth point asserts that it was error to render judgment in favor of H. Edward Smith, said Smith having failed to file an answer.

■ The judgment in favor of Smith was correct for these reasons: (1) Smith did file a written answer in the form of a disclaimer; (2) there was no proper finding that the affidavit of Smith in regard to the $30,000 of improvements was false; (3) Section Fifteen of the lease contract provided that upon assignment of the lease by lessee (Smith) to a corporation "lessee

personally shall be relieved of all responsibility under the terms of this lease"; (4) Smith in person appeared, participated in the trial as a party, and gave his testimony. Even if no written answer of any kind had been filed in his behalf, appellants under the circumstances have waived their right to take advantage of his failure to file a written answer. Shaw v. Whitfield, Tex. Civ.App., 35 S.W.2d 1115; Guaranty State Bank v. Brill, Tex.Civ.App., 268 S.W. 260, 265; W. T. Rawleigh Medical Co. v. Mayberry, Tex.Civ.App., 193 S.W. 199; Rules 67 and 90, Texas Rules of Civil Procedure; 25 Tex.Jur. 393 and 401. Appellants' eighth point is overruled.

In their ninth point appellants allege error of the trial court in rendering a take-nothing judgment in favor of appellees, since the record undisputedly establishes that appellants at least are entitled to the fee title to the property subject to the lease.

■ Appellants' action in trespass to try title was directed only at the leasehold estate in an effort to cancel the lease. Appellees did not and do not now deny that lessors own the fee title to the property, subject of course, to lessees' leasehold estate. There is no issue in the case in regard to lessors' fee title to the property. Therefore, the take-nothing judgment in no way affects lessors fee title to the property. Poth v. Roosth, 146 Tex. 7, 202 S.W. 2d 442; Jinks v. Whitaker, 145 Tex. 318, 198 S.W.2d 85; Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564. Appellants' ninth point is overruled.

In support of their prayer that the judgment of the trial court should be affirmed, appellees have briefed seven counterpoints answering the nine points on appeal of appellants. These counterpoints have been covered in our discussion of appellants' points. The seven counterpoints of appellees are sustained.

Appellees also present twenty-three cross-points which, if sustained, would

make it improper to render judgment in favor of appellants. As we have already indicated, we think that cross-points Nos. 1 and 3 were well taken and should be sustained. However, since we have overruled appellants' points and have concluded that the trial court's judgment should be affirmed, it is unnecessary further to discuss or rule on appellees' cross-points, and we shall not do so.

The trial court correctly sustained appellees' motion for judgment non obstante veredicto. The judgment is affirmed.

WILLIAMS, J., not sitting.