143 N.J. Super. 449 (1976)
363 A.2d 390
TOWN OF KEARNY, PLAINTIFF,
v.
MUNICIPAL SANITARY LANDFILL AUTHORITY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 30, 1976.
*451 Messrs. Shanley & Fisher, attorneys for plaintiff. (Mr. John J. Francis, Jr., of counsel, appearing).
Messrs. Water, McPherson & Hudzin, attorneys for defendant, (Mr. Walter J. Hudzin, appearing).
YOUNG, J.C.C., Temporarily Assigned.
The issues submitted on motions filed by both parties for an order granting summary judgment necessitate an analysis of the elements which distinguish a lease, a license and an easement. That analysis is prefatory to a determination of whether a covenant against subletting or assignment has been breached in *452 the circumstances of the case. This is the most recent of a multiplicity of litigation spawned by the garbage dumping operations managed by the defendant Municipal Sanitary Landfill Authority in the Hackensack Meadowlands.
The initial pleading was filed by the plaintiff, Town of Kearny in the Hudson County District Court as a tenancy action praying for a judgment of possession of land leased to defendant Municipal Sanitary Landfill Authority, (Municipal). The action was transferred to the Superior Court, Law Division, upon motion of Municipal pursuant to the provisions of N.J.S.A. 2A:18-60. Kearny predicts its entitlement to such a judgment of possession upon an alleged breach of covenants in a lease  covenants which proscribed assignment or subletting. The parcels of land in question have been utilized for sanitary landfill operations.
Kearny asserts that the covenant against assignment and subletting was breached when Municipal and the City of Newark entered into an agreement dated November 5, 1969, supplemented by an agreement dated December 24, 1972. The legal tenor of the agreement, whether a lease, a license or some other species of interest, frames the threshold, and indeed the controlling, legal issue.
The agreement between Municipal and Newark, dated November 5, 1969, represented the culmination by settlement of an action filed by Newark in April 1969 against the separate corporations which today comprise Municipal, namely, Delaware Sanitation Co., Peter Roselle and Sons, Inc., William A. Keegan, Inc., and Reclamation and Improvement Co. The genesis and course of that earlier litigation is not of continuing interest except for the fact that Kearny was also a party defendant therein. The resolution of that prior dispute took the form of an agreement which granted permission to Newark to deposit its refuse on the land which is the subject of the present action. Kearny now contends that the agreement constituted a subletting which violates a provision of the lease between Kearny and Municipal forbidding Municipal to sublet the demised premises or to assign *453 the lease without prior consent. A breach of the restraint described would entitle Kearny to invoke a re-entry clause.
Municipal points to the acceptance of rental monies by Kearny under their lease notwithstanding knowledge by all of the parties of the terms of the resolution of the earlier litigation. Kearny denies that it was privy to the terms of settlement. Municipal also argues that the same conduct on the part of Kearny would support an estoppel. Lastly, although Municipal does not mention waiver, it may be noted in passing that Kearny's conduct would also make such a defense relevant.
One final fact requires mention before the legal relationships of all parties, Kearny, Municipal and Newark, are analyzed. Kearny first notified Municipal on November 20, 1975 of a breach of the clause which prohibited subletting. The notification pointed out that the lease provided for a ten-day period within which Municipal was to cure a breach. In reply, Municipal maintains that it took effective action within the parameters of the agreement.
A determination of the issue of the legal relationship negotiated between Municipal and Newark upon which Kearny bases its claim for right of re-entry on grounds of breach of its lease with Municipal is the central issue. The focus of the inquiry is clause 16 of the Kearny-Municipal lease which reads:
16. The tenant shall not subject [sic] the demised premises nor any portion thereof, nor shall the lease be assigned by the tenant without the prior written consent of the landlord.
The provisions of such a clause encounters the disfavor of our law for restraints against assignment of leases and subletting of premises. See Corp. Bd. Union Lodge, etc. v. J.R. Evans Co., 102 N.J.L. 435, 437 (E. & A. 1926). A review of the case law in this jurisdiction discloses that the provisions of such clauses are strictly construed and accorded a narrow interpretation. See 24 Broad St. Corp. v. Quinn, 19 N.J. Super. 21 (Ch. Div. 1952); Stark v. Nat. Research *454 and Design Corp., 33 N.J. Super. 315 (App. Div. 1954); Posner v. Air Brakes and Equipment Corp., 2 N.J. Super. 187 (Ch. Div. 1948). See also, 3 Powell, Real Property, § 246(1) at 372.82  372.85 (1975).
The settled judicial policy of strict construction of restraints of the type under review represents the frame of reference within which the court will examine the agreement between Municipal and Newark. The prefatory paragraphs of the agreement indicate the intention of the parties, more specifically, the paragraph which reads: "Whereas, the City is desirous of entering into an agreement to permit it to deposit its garbage, refuse and other waste materials on property leased by the Venture from the Town of Kearny, New Jersey." The designation "Venture" has reference to the joint venture more correctly described as the Municipal Sanitary Landfill Authority, defendant herein. Paragraph F provides for the compensation scheme which is a schedule of charges based on a number of cents per cubic yard of garbage, escalating over the three-year life of the agreement from an initial charge of $.16 a cubic yard the first year, to $.18 a cubic yard the second year, and $.20 a cubic yard for the third and final year. Paragraph B of the agreement reserved to Municipal the right to designate the areas, described as parcels to which Newark was to have access to deposit its garbage. The terms of paragraph E extended the right to dump to the City of Newark, which, according to the terms of paragraph 5, comprised the city and its own agencies, including the board of education and Newark Housing Authority. Although the paragraph noted contains the phrase "shall be exclusively used by the City," in reference to areas designated for deposit of the city's refuse, the entire agreement was made "subject to the terms of the Lease," i.e., Kearny also enjoyed access for dumping its refuse. (Paragraph C) Lastly, paragraph 20 provides that in case of violation by city of any covenant or condition, Municipal may re-enter the area assigned to city, and no waiver by *455 "the landlord" of any violation of any covenant shall be construed as a waiver of any other covenant.
Kearny views the agreement between Municipal and Newark as a lease, contending that the provisions collated in the preceding paragraph establish a grant of "exclusive possession" of the premises in the City of Newark. Kearny concludes that the agreement falls within the proscription of paragraph 16 of its own lease with Municipal which prohibits subletting of the premises or assignment of the term. Municipal views the agreement as a license and therefore argues that there is no violation of its lease with Kearny.
The agreement between Municipal and Newark lacks significant requisites of both a lease and a license. The opinion in Thiokol Chem. Corp. v. Morris Cty. Bd. of Tax., 41 N.J. 405 (1964), provides not only a design for analyzing the subject agreement, but reiterates (at 417) the established principle of interpretation that "whether a particular agreement is a lease depends upon the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making as well as by their course of operation under it."
The major distinction between a lease and lesser interests in land devolves upon the element of possession which, in turn, is dispositive of whether an estate in land is created. The creation of interests in land less than a leasehold do not give rise to an estate in land. The case law defines a lease as "a hiring of land, or a sale of the possession, occupancy and profits of land for a term." Id. at 416. The term "lease" was recently the subject of definition by Judge Allcorn in Sandyston Tp. v. Angerman, 134 N.J. Super. 448 (App. Div. 1975), in the following excerpt:
* * * a lease is a grant of exclusive possession to use the land for any lawful purpose, subject to the reservation of a right of possession in the landlord for any purpose or purposes "not inconsistent with the privileges granted the tenant." [at 451]
*456 A lease vests exclusive possession in the tenant for the term even as against the owner in fee; less than exclusive possession militates against a finding of the landlord-tenant relationship. The transfer of the exclusive possessory right results in the creation of an estate in land termed a leasehold or an "estate for years." Lesser interests in land are distinguished by the absence of the creation of an estate in land.
Justice Francis delineated the distinguishing features of agreements which give rise to the creation of a leasehold interest:
Ordinarily when a lease is made we find an agreement by the owner-lessor to turn over specifically-described premises to the exclusive possession of the lessee for a definite period of time and for a consideration commonly called rent. Although no absolute requirement exists for the use of particular words, the instrument is usually studded with terms (lacking here) such as "lease," "let," "demise," "grant" and the like. [Thiokol Chem. Corp. v. Morris Cty Bd. of Tax., supra, 41 N.J. at 416]
By contrast, a license and other lesser interests in land are distinguished by less than an exclusivity of possession. A license creates a right of use and occupancy in the licensee to the extent necessary to perform an agreement between the parties. 32 Am. Jur., Landlord and Tenant, § 3. A license confers authority to go upon the land of another and do an act or series of acts there, but it does not give rise to an estate in land. See East Jersey Iron Co. v. Wright, 32 N.J. Eq. 248 (Ch. 1880). "A license is simply a personal privilege to use the land of another in some specific way or for some particular purpose or act." Sandyston Tp. v. Angerman, supra, 134 N.J. Super. at 451.
In the resolution of ambiguity or doubt, as in the present case, Justice Francis suggested four determining factors, namely:
* * * absence of (1) a stipulation for rent as such, or other consideration regarded by the parties as constituting payment for the *457 transfer of possession, and (2) a term; and presence of (1) limitations on exclusive possession and control of the premises, and (2) a right in the owner to revoke the permit to use at any time, are factors militating against the existence of a lease. [Thiokol Chem. Corp. v. Morris Cty. Bd. of Tax., supra, 41 N.J. at 417]
Conversely, the absence and the presence of the four factors, respectively, would support a finding that the agreement points to a license.
As for the agreement between Municipal and Newark, the compensation scheme previously described envisages that Newark would pay at a sliding rate, depending on the quantity of the refuse dumped, rather than a fixed charge for a discrete interval of time. The phrase "each month" in paragraph F has reference to when the obligation will become due and payable rather than a specification of duration as that phrase is used in the law of property. While not conclusive in itself, the compensation scheme tends to deflect from a finding that a transfer of possession was intended. See Restatement of Property, § 472 at 2966 (1944). Moreover, the drafters of the agreement scrupulously avoided the use of the term "lease" but instead resorted to terms such as "permit" and "permission" to define the right being acquired by Newark. The term "landlord" does appear. Again, terms must not be construed in isolation, but as part of an integrated whole. This dichotomy points up the wisdom of the precept that resort to the language of the entire agreement is essential in divining the legal effect of the instrument. Thiokol Chem. Corp. v. Morris Cty. Bd. of Tax., supra, 41 N.J. at 417.
The provision of the agreement which reserved to Municipal the right to designate the area accessible to Newark, paragraph B, indicates that possession of a particular parcel of land was not envisaged by the parties, to say nothing of exclusive possession. Rather, it appears from the language that the parties intended that Newark acquire a right to come on the land and dump in areas which could be designated from time to time by Municipal. This deduction is supported *458 by the "Whereas" clause which introduces the instrument, and in that preface the intention of the city is specifically stated to be the desire to enter "into an agreement to permit it to deposit its garbage, refuse and other waste materials on property leased by the Venture from the Town of Kearny, New Jersey." These provisions militate against a conclusion that Municipal and Newark intended to create an estate in land, i.e., to execute a lease.
Kearny relies heavily on paragraph 20 for its characterization of the subject agreement as a lease. As previously delineated, there is reserved a right of re-entry to the "landlord." In view of the tenor of the agreement as a whole that provision is anomalous. The right of re-entry, standing alone, is not determinative of the legal effect of the agreement which was artlessly drafted. Moreover, the use of the term "landlord" by the draftsman does not compel a finding that a landlord-tenant relationship was created.
Did the parties intend to confer a license? The essential hallmark of a license is a right in the owner to revoke the permit at any time. 3 Powell, Real Property, supra, § 428 at 526.62. "The intended privilege is revocable at the will of the servient owner in every such case, as the parties intended it should be." Id. See also Restatement of Property, supra, § 519(1) at 3133-3139. The permit endures at the grace and sufferance of the licensor. Municipal and Newark did not provide for such right in Municipal in the subject agreement; the initial agreement specified a fixed term of years while the renewal was open-ended with a 30-day notice requirement for termination. Clearly, the agreement is not revocable at will.
The subject agreement between Municipal and Newark falls neither within the ambit of the definition of a lease nor of that of a license. Nor does the instrument give rise to a so-called "irrevocable license" which contemplates a right to enter to recover chattels from another's land when a prior possessory interest has terminated. What species of interest, then, does the agreement bring forth? This court *459 concludes that the negotiating parties did intend to create an interest in land. Professor Powell previsions the interest in his subtle analysis drawn from his treatise on real property:
It is common practice to draw a line between the "licensee" and the "tenant for years" in terms of the absence or presence of a right of exclusive possession of a defined physical area. This leads to no bad results so long as one is concerned only with the presence or absence of the consequences attributable to the existence of an estate for years. It is an unfortunate terminology when one is further concerned with the kind of relationship created in cases where it is found that no estate for years exists. The non-estate-for-years may either be a revocable relationship (properly called a license) or an irrevocable relationship which should be called an easement. [3 Powell on Real Property, supra, § 430 at 526.75-526.76]
Professor Powell notes that an easement is clearly an "interest in land" but it is never an estate in land. 3 Powell, op. cit., § 405 at 388. Six factors are important to the classification of an "interest in land" and they are: (1) the fact that it is an interest in land which is in the possession of another; (2) the content of the interest as a "limited" use or enjoyment of the land in which the interest exists; (3) the availability of protection of the interest as against interference by third persons; (4) the absence of terminability at the will of the possessor of the land; (5) the fact that it is not a normal incident of a possessory land interest, and (6) the fact that it is capable of creation by conveyance. Restatement of Property, supra, § 450 at 2901. An easement satisfies the factors enumerated.
The interest in land created by the Municipal-Newark agreement is not a lease, as contended by Kearny, nor is it a license, as contended by Municipal. The interest created is an easement, more particularly an easement in gross running to the benefit of Newark. This conclusion necessarily follows from the irrevocable character of the agreement.
There remains for disposition the question of whether the grant by Municipal of an easement in gross to Newark is a *460 "subletting" which would constitute a breach of the Kearny-Municipal lease. For obvious reasons the prohibition against assignment of the lease in clause 16 is not relevant. Mindful of the judicial policy of strict construction mentioned at the outset, the aspects of the particular easement here declared will be examined to determine if its creation constitutes a method of "subletting" as contemplated by the use of that term in the lease.
The interest in land here declared is definitely nonpossessory in character: the interest permits the grantee a limited use or enjoyment of the burdened tenement. See Krause v. Taylor, 135 N.J. Super. 481 (App. Div. 1975). Is the grant of such a limited use of land within the compass of the term "sublet"? The response to that question is necessarily tempered by the judicial displeasure for forfeitures. Keeping in mind the nature of a lease, a subletting as distinguished from an assignment involves the grant of an estate smaller in term or physical area than that held by the primary lessee. The relation between the primary lessee and the sublessee is exactly the same as that between any lessor and lessee. The parties are in privity of estate and an exclusive possessory interest is conveyed.
An easement transfers no possessory interest; it is an interest in land in the possession of another. Restatement of Property, supra, § 450 at 2. By definition, an easement is placed outside the scope of the concept designated by the term "lease" and, concomitantly, outside the scope of a restriction against subletting.
A review of decisional law has not disclosed a case which placed an easement in apposition to a covenant against subletting. It has been adjudicated, however, that the creation of an easement does not give rise to a landlord-tenant relationship. See Jones v. Russell, 187 Misc. 827, 194 So. 290 (Sup. Ct. 1940); Muzzio v. Steele, 279 Pa. 226, 123 A. 776 (Sup. Ct. Pa. 1924); 51 C.J.S., Landlord and Tenant § 6(1) (1967). A restriction against subletting would restrain a lessee from establishing a lessor-lessee relationship *461 with another, but then the restriction would exhaust itself. Other types of nonpossessory lesser interests in land, such as a licensing arrangement, are not drawn within the dimension of the restriction as recited in clause 16 of the Kearny-Municipal lease. Put another way, the essence of a covenant against subletting is the limitation on the right to transfer a possessory interest.
On the finding that the agreement between Municipal and Newark involved a transfer of rights and did not create an estate in land, the provisions of clause 16 have not been breached as a matter of law. On the record submitted, including the affidavits, in light of the decisional law, the authorities and texts referred to and the representations of the parties, this court concludes that Kearny has not demonstrated that the agreement between Municipal and Newark has sufficiently distinctive characteristics of a lease to warrant holding it to be a lease. The burden is on the party asserting it to demonstrate the existence of the lessor-lessee relationship. Thiokol Chem. Corp. v. Morris Cty. Bd. of Tax., supra, 41 N.J. at 417. Kearny has not carried that burden.
The challenged agreement created an easement in gross. On the holding that there could be no breach of the restraint against subletting, Municipal is entitled to an order for summary judgment, while the cross-motion of Kearny for the same relief is denied.
Kearny moves for an order to allow amendment of its complaint pursuant to R. 4:9-1. The form of amended complaint annexed to the moving papers discloses that Kearny intends to allege breach of various other covenants in its lease with Municipal. Municipal, in opposition, asserts failure of Kearny to comply with notice provisions, citing Cartaret Properties v. Variety Donuts, Inc., 49 N.J. 116, 124 (1967).
No answer or responsive pleading has been filed to date. The cause is now in the Superior Court and under the applicable rule a party may amend his pleading as a matter of course at any time before a responsive pleading is served. *462 R. 4:9-1. Kearny's motion to file an amended pleading is granted. Municipal's objections are reserved to proceedings taken after service of the amended pleading.