179 N.J. Super. 400 (1980)
432 A.2d 141
OUTERBRIDGE TERMINAL, INC., A CORPORATION OF THE STATE OF NEW JERSEY; NEUBERNE H. BROWN, JR. AND LOVETT C. PETERS, PLAINTIFFS,
v.
CITY OF PERTH AMBOY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; ZONING BOARD OF ADJUSTMENT OF THE CITY OF PERTH AMBOY AND THOMAS SINATRA, BUILDING INSPECTOR OF THE CITY OF PERTH AMBOY, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided March 20, 1980.
*402 Stephen E. Barcan, for plaintiff (Wilentz, Goldman & Spitzer, attorneys).
Emery Toth for defendant.
LONG, J.S.C.
The issue involved here is whether the existence of a particular contractual arrangement between a private citizen and the Federal Government entitles the citizen to claim immunity from local zoning regulations.
Plaintiffs are Outerbridge Terminal, Inc., Neuberne H. Brown, Jr. and Lovett C. Peters. Defendants are the City of Perth Amboy, its zoning board of adjustment and Thomas Sinatra, its building inspector. The case arose as follows: on January 16, 1981 plaintiffs entered into a contract with an agency of the United States Department of Defense, pursuant to the Armed Services Procurement Act (10 U.S.C.A. § 2301 et seq.) to provide services and facilities in Perth Amboy for the receipt, storage and shipping of government owned jet fuel. Subsequently, plaintiffs sought a building permit for tank construction from the municipality, which permit was denied by the building inspector on January 30, 1981 on the basis that under the local zoning ordinance the proposed facility was not a permitted use. On February 1, 1981 plaintiffs filed a complaint in lieu of prerogative writs seeking an order directing defendant municipality and its building inspector to issue a building permit for the construction. Alternatively, plaintiffs sought a declaration that no permit was needed.
On February 11, 1981 plaintiffs moved for summary judgment on the basis that the project in question was being built for the Federal Government pursuant to a lease and that it was therefore immune from the strictures of the Perth Amboy zoning ordinance. Plaintiffs have argued in the alternative that even if their arrangement is not a lease, they are still entitled to immunity. Defendants opposed the motion on the grounds that *403 the agreement between plaintiffs and the Federal Government is not a lease at all and is therefore subject to local zoning restrictions, and that in any event, the enabling legislation in question distinguishes this case from any of the applicable immunity decisions.
Initially, it should be noted that the Armed Services Procurement Act, supra, which is the relevant enabling legislation here and which allows the Department of Defense to enter into leases for valid governmental purposes, specifically prohibits the leasing of land. 10 U.S.C.A. § 2303(b). It has also been conceded that the Federal Government is unwilling to provide the court with a statement that its agreement with plaintiffs is actually a lease, or even that it is a lease in substance.[1]
The court is faced with several questions which will be dealt with serially. The first is whether the decision in Thanet Corp. v. Princeton Tp. Bd. of Adj., 108 N.J. Super. 65 (App.Div. 1969), certif. den. 55 N.J. 360 (1970), provides immunity from local zoning restrictions in cases in which the government has other than an ownership or leasehold interest in the land at issue. In Thanet the Appellate Division unqualifiedly adopted the holding of the trial court (reported at 104 N.J. Super. 180 (Law Div. 1969) that the United States Government, whether as owner or lessee, is immune from local zoning ordinances. There is no question but that Thanet is a more expansive decision than that in Tim v. Long Branch, 135 N.J.L. 549 (E.&A. 1947), its basic predecessor case, insofar as the general principles of immunity are concerned. In this regard, the enabling legislation at issue in Tim contained a specific grant of immunity from local zoning restrictions. Thanet, on the other hand, involved enabling legislation which did not explicitly confer such immunity. The Thanet court, nevertheless held the immunity to be presumptive in the absence of statutory language to the contrary. See, also, Aviation *404 Services v. Hanover Tp. Bd. of Adj., 20 N.J. 275 (1956). Thus, Thanet expanded the law of immunity to include all cases of ownership or lease by the government in which immunity was not specifically precluded by statute.
Here, plaintiffs seek a ruling that Thanet immunity applies even if the interest of the government in the property falls short of ownership or leasehold. In my estimation, nothing in Thanet supports plaintiffs' view, and important public policy considerations militate against such a wide-ranging extension of Thanet. I take this position in light of the language of the decision in that case which is limited on its face to ownership and leasehold interests. More important, in my estimation, is the fact that the common sense of the situation points to the same conclusion. There is no question but that the Federal Government has a concern with the subject of storage of its jet fuel. But plaintiffs' suggestion that that concern is, in itself, absent an ownership or leasehold interest, sufficient to bring the contract in this case within the immunity provisions of Thanet is irreconcilable with the underpinnings of zoning-immunity law. Zoning regulations are directed to the land itself, and in determining whether the important local interests which are reflected in a zoning scheme ought to be avoided by immunity, the pivotal question is the nature of the government's interest in the property and not the nature of the government's interest in the subject matter of the contract. Absent some kind of ownership or leasehold interest in the property, the government's philosophical concern with the subject matter of a particular contract is irrelevant to a claim of immunity.
Moreover, there are important policy considerations which undercut the expansion of Thanet suggested by plaintiffs here. These policies were expressed in the concurring opinion of Judge Carton in Thanet when he said:
Indeed, the broad principle enunciated by the majority cannot fail to encourage private lessors to invoke governmental immunity through leasing arrangement with state or federal agencies, thereby avoiding local planning considerations and disregarding community sensibilities. Moreover, once the lease has *405 terminated the community is likely to be left with the shell of a structure which can, as experience has only too often demonstrated, serve as the cornerstone for a hardship variance application, the granting of which may perpetuate or even magnify the discordant use. The structure remains in any event, a monument to the absence of co-operation between the community and the superseding governmental entity. [108 N.J. Super. at 72-73]
Certainly these concerns would be magnified enormously if every single arrangement with the Federal Government, regardless of its nature, gave private citizens the right to invoke governmental immunity as against local interests. The erosion of local control in the area of zoning for health, safety and welfare which could result from such a sweeping view of immunity is a matter of grave public concern which should not be taken lightly. If, as Judge Carton opined, the decision in Thanet itself harbors a far-reaching threat to the basic objectives of zoning without any corresponding benefit, the negative potential of the expansion of the doctrine of immunity sought by plaintiffs here is incalculable. Taking all of these facts into consideration, it is my opinion that the decision in Thanet confers immunity on governmental ownership or leasehold interests and not on any interest short of those.
Having determined the scope of immunity in Thanet to be limited to governmental ownership and leasehold interests, the question presented is whether the arrangement between plaintiffs and the government here constitutes a lease. Although the issue of the standing of plaintiffs to assert immunity has not been challenged, that procedure having been impliedly approved in Thanet,[2] there is a variation on that theme in connection with the claimed lease which is relevant here. The federal agency with which plaintiffs have contracted has no power to lease real estate and, lacking such power, is not in a position to either make or support plaintiffs' claim that the arrangement is a lease. In essence, by coming to this court and *406 seeking to have its contract with the government declared a lease for immunity purposes, plaintiffs are making an assertion which the government agency itself would be without power to make on its own behalf because of the limitation in its enabling legislation. I do not believe that plaintiffs' claim can rise above what the government could have claimed here. Plaintiffs therefore lack standing to assert that their agreement with the government is a lease since the government could not have made that claim.
Assuming, however, that plaintiffs have standing to assert the existence of a lease, I do not believe that they have demonstrated that this contract has sufficiently distinctive characteristics to warrant holding it as a lease. In this regard, whether a particular agreement is a lease depends on the intention of the parties as revealed by the language employed in establishing their relationship, and that intent, as expressed or apparent in the writing controls. 51 C.J.S. Landlord & Tenant, § 202(5). Where ambiguity arises, the burden is on the party asserting the lease to demonstrate its existence. Thiokol Chemical Corp. v. Morris Cty. Bd. of Tax., 41 N.J. 405 (1964).
As has previously been noted, the contract here involves services to provide facilities, personnel, equipment and supplies necessary to receive, store and ship government-owned jet fuel, more particularly, 450,000 barrels with a yearly throughput (the contractual term) of 3,000,000 barrels. In my estimation, the fact that the parties did not intend to create a lease is evidenced by the contract documents themselves, which are devoid of any terms ordinarily found in a lease. For example, the arrangement is not called a lease but rather a "contract for non-personal services." Similarly, where it is delineated more fully, it is described as a procurement for "services" in which the contractor will furnish facilities, equipment, personnel and supplies. Likewise, the solicitation for the bid calls for the provision of *407 "services to receive, store and ship one grade of government owned jet fuel." In fact, a close review of the enormous number of documents which constitute plaintiffs' arrangement with the Federal Government indicates that there is not a shred of traditional lease language existent. Nor do the documents reflect the use of any of terms interchangeable with traditional lease language. The drafters of these documents assiduously avoided such terms, and that avoidance is a factor militating against a finding that the parties intended a lease.
In Thiokol, supra, the court declared this kind of a situation to be highly probative as to the nonexistence of a lease. The court noted that
Although no absolute requirement exists for the use of particular words, the instrument is usually studded with terms (lacking here) such as "lease", "let", "demise", "grant" and the like. [41 N.J. at 416]
Similarly, in Kearny v. Municipal San. Landfill Auth., 143 N.J. Super. 449 (Law Div. 1976), where the existence of a lease was rejected, the court (at 457) observed as significant the fact that "the drafters of the agreement scrupulously avoided the use of the term `lease'...."
Additionally, the monthly payments under the contract here are called "storage charges" and they vary according to the amount of fuel received and shipped over 3,000,000 barrels on a sliding scale. This kind of a payment scheme was discussed in Kearney, supra, and was held to "deflect" from a finding that a lease existed. 143 N.J. Super. at 457. Certainly the choice of words used by the drafters of the arrangement does not reflect an intention to create a lease.
Moreover, irrespective of the language of the documents, it is clear that the parties could not have "intended" the creation of a leasehold interest since it is conceded that the Armed Services Procurement Act, which permits the Department of Defense to enter into leases, specifically exempts land from the terms of those leases (10 U.S.C.A. § 2303(b)).
*408 In this connection, it is significant that even now the government will not call its contract a lease at all, nor, when pressed, will any representative of the government even characterize it as in substance a lease. The reason for this is clear. It is not a lease, but a contract for services to be supplied with regard to the government's jet fuel. While it is true that facilities for storage are a part of this contract and are delineated with specificity as to location and size requirements in terms of access to various pipelines, a review of the contract shows that it is the "service" of receiving, storing and shipping the jet fuel which is the essence of the agreement. Here, unlike the situation in Thanet, the government is not simply leasing property from a citizen on which it will perform all the functions of receiving, storing and shipping its jet fuel. Rather, it is buying a service from plaintiffs' only one aspect of which is the provision of the actual storage space. The most that can be said of the agreement here is that it is a true service contract with several peripheral land related provisions. For the foregoing reasons I do not find that plaintiffs have established the existence of a lease.
In passing, it should be noted that plaintiffs have argued that their arrangement with the government is truly a lease by another name and that to declare it outside the scope of Thanet would be a triumph of form over substance. If my ruling today were based solely on the name of the agreement, plaintiffs' argument might indeed have merit. However, I have found specifically that the agreement is not a lease at all and, in fact, that the government is powerless to enter into a lease. Under the circumstances, it is not the form of the agreement but the substance of it which was controlling. Nothing in this opinion in any way would restrict the invocation of Thanet immunity in a case in which the government had a legitimate leasehold interest in property in another form.
The motion for summary judgment declaring that plaintiffs need not seek a building permit is denied.
NOTES
[1] At the original argument on the motion the court suggested that plaintiffs enlist the aid of the government here. This effort by plaintiffs was unsuccessful.
[2] But see Rutgers v. Piluso, 60 N.J. 142 (1972); Washington Tp. v. Central Bergen Comm. Health, 156 N.J. Super. 388 (Law Div. 1978)