NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-3857-11T1[1]
            A-4784-11T1

CARIBBEAN HOUSE, INC., a
New Jersey Corporation,

     Plaintiff-Respondent,

v.

NORTH HUDSON YACHT CLUB, a
New Jersey Corporation,

     Defendant-Appellant,

and

THE RIVER PALM TERRACE,

     Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **December 30, 2013** |
| **APPELLATE DIVISION** |

Argued March 6, 2013 - Decided December 30, 2013

Before Judges Grall, Koblitz and Accurso.

On appeal from Superior Court of New Jersey,
Chancery Division, Bergen County, Docket
No. C-322-11.

Peter J. Koulikourdis argued the cause for
appellant (Koulikourdis and Associates,
attorneys; Sasha C. Intriago, on the brief

_____

[1] These are back-to-back appeals consolidated for the purpose of
this opinion.

(A-3857-11T1); Mr. Koulikourdis, on the briefs (A-4784-11T1)).

Mark Turnamian argued the cause for respondent Caribbean House, Inc.

Sekas & Abrahamsen, L.L.C., attorneys for respondent The River Palm Terrace, join in the brief filed by appellant.

The opinion of the court was delivered by

ACCURSO, J.A.D.

Defendant in these back-to-back appeals, North Hudson Yacht Club (Yacht Club or the Club), appeals from two final orders in favor of plaintiff Caribbean House, Inc. (Caribbean House), restricting the use of a deeded access easement Caribbean House granted to Yacht Club when it sold the Club its property in 1968. Because we believe the Chancery judge erroneously concluded that the use of the easement to which Caribbean House objected benefitted a property other than that to which the easement is appurtenant, we reverse.

Although we have not been provided the deeds by which the parties took title to their adjacent properties, the critical facts underlying the controversy are undisputed. The two properties were once part of a single rectangular tract bordered on the east by the Hudson River and on the west by River Road in Edgewater. The entire parcel appears to have consisted of approximately eight acres. When Caribbean House acquired the

tract in 1961, there was a newly-constructed six-story, sixty-two unit apartment building and pool located on the western portion, which Caribbean House now operates as a "co-op." Caribbean House subsequently subdivided the parcel, retaining the western portion bordering River Road for itself, and conveying the eastern portion bordering the Hudson River to Yacht Club by deed dated July 11, 1968.

As the sub-divided parcel was landlocked, Caribbean House simultaneously and "as additional consideration" granted Yacht Club an access easement across Caribbean House's retained land as a means of ingress and egress to River Road from Yacht Club's property. Specifically, the recorded Declaration of Easement provides

> The "[Caribbean] House," as additional consideration to that paid by the "[Yacht] Club" to [Caribbean House] for the delivery of a deed to the "Club" by the said [Caribbean House] of even date herewith, for certain lands and premises situate off the easterly side of River Road and abutting the most easterly rear line of the lands and premises now owned by "[Caribbean] House," and commonly known as No. 1375 River Road, Edgewater, N.J. does for itself, its successors and assigns, make, declare, set aside and grants an easement or right of way unto the "Club," its successors and assigns, as a means of ingress and egress to River Road from its lands and premises so conveyed to it by the said [Caribbean House], over the 10 foot wide strip of land, the same being shown on a survey

attached to the document and specifically described by metes and bounds therein.[2]   The parcel Caribbean House conveyed to Yacht Club consisted of approximately five and one-quarter acres and included a clubhouse, piers and docks, and a large parking lot, which the parties agree can accommodate over one hundred and fifty cars.  The ten-foot-wide easement runs from River Road through Caribbean House's driveway and parking area approximately three hundred and seventy-two feet to the western edge of Yacht Club's property.

Over the ensuing forty years, the easement was used by club members, their guests, boat mechanics and detailers, police and fire department personnel, boat haulers, waste haulers, members of the Auxiliary Coast Guard, and the Sea Scouts, all without incident.  In 2010, however, Caribbean House objected to Yacht Club allowing cars from a nearby restaurant to park on Yacht Club's property.  The River Palm Terrace (River Palm), a restaurant located nearby on River Road, lost certain off-site parking due to construction.  One of the owners, John Campbell,

---

[2] Although the "Declaration of Easement" states that Yacht Club's property was conveyed to it by Milton Karel, not Caribbean House, the parties agree that Caribbean House owned the undivided parcel and conveyed the eastern portion to Yacht Club. It appears that Milton Karel was merely authorized to transact business on behalf of Caribbean House, as he also signed the "Declaration of Easement" on Caribbean House's behalf.

an honorary member of Yacht Club, approached the commodore of the Club seeking permission for River Palm to park its customers' cars in Yacht Club's parking lot.  Yacht Club agreed, and River Palm's valet service began parking patrons' cars on Yacht Club's property in August 2010.  The arrangement was made as a courtesy to Campbell and done without any payment to Yacht Club.

By letter dated February 1, 2011, Caribbean House notified Yacht Club of its objection to River Palm's use of the easement. Caribbean House claimed that River Palm's use of the access easement "to park [its] cars on your property" was "impermissible, and exceeds the use for which the easement was granted."  Caribbean House stated that it "might be willing to entertain a proposal for a temporary license across the easement upon the payment of a fee each month, [but] without any such license, the unauthorized use of this easement . . .  needs to cease immediately."

When Yacht Club continued to allow River Palm to park its patrons' cars on the Club's property, Caribbean House filed a complaint in the Chancery Division seeking to enjoin the use. Caribbean House thereafter sought summary judgment contending that a dominant tenement cannot allow a third party to use its easement without benefit to the dominant tenement, in the

absence of a possessory interest. Yacht Club countered that it was free to invite whomever it wished to use its property, which can only be accessed via the easement. The Club contended that Caribbean House was attempting to restrict the use of Yacht Club's property and that the Club would be willing to lease its property to River Palm if necessary to address Caribbean House's concerns over use of the easement.

At the conclusion of oral argument on the motion, Yacht Club's counsel asked whether a written lease agreement between Yacht Club and River Palm would allow River Palm's continued use of the easement. The Chancery judge declined to consider the scenario as it was not before the court. The judge thereafter granted Caribbean House's motion for summary judgment, finding that Yacht Club was without authority to grant permission to a third party "to burden the easement with uses not serving or benefitting the Club."

Shortly thereafter, Yacht Club entered into a one-year "Commercial Lease Agreement" with River Palm at a rent of $500 per month. Although purporting to lease "a portion of the property," the agreement does not specify what "portion" of the land is being leased. The lease is, however, subject to the lessor's rules and regulations "which may include but is not necessarily limited to . . . the number of cars, location of

parking, hours of the use of the access easement and any other rules and regulations deemed to be in the interest of Lessor."

A "First Rider" specifies,

> Lessor states that unused parking spaces on the Premises may be used to park thirty (30) to forty (40) motor vehicles on the Premises from 6:00 p.m. to 10:00 p.m. on each Friday and Saturday evening for the duration of this Lease Agreement. Lessee shall not interfere with the normal operation of the North Hudson Yacht Club during any other hours not herein specified.

Following execution of the agreement, River Palm's valet service resumed its use of Yacht Club's parking area.

After an exchange of letters in which the parties disagreed over whether this new arrangement constituted a violation of the prior order, Caribbean House filed a motion to enforce litigant's rights. The next day, members of its Board of Directors used their cars to block River Palm's valets from accessing Yacht Club's parking area. Thereafter, Yacht Club filed an order to show cause seeking temporary restraints that would prevent Caribbean House from interfering with River Palm's use of the easement. After hearing argument on the competing applications, the Chancery judge determined that the purported lease did not entitle River Palm to use the easement in order to park its customers' cars on Yacht Club's property. Accordingly, he granted Caribbean House's request to enforce the prior

A-3857-11T1

summary judgment order and denied Yacht Club's and River Palm's requests for an injunction.  Yacht Club appeals both the summary judgment and the Chancery judge's subsequent order enforcing it.

We review summary judgment using the same standard that governs the trial court.  Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010).  As the parties agreed on the material facts for purposes of the motion, our task is limited to determining whether the trial court's ruling on the law was correct.  Prudential Prop. & Cas. Ins. v. Boylan, 307 N.J. Super. 162, 167 (App. Div.), certif. denied, 154 N.J. 608 (1998).  Because a trial court does not enjoy an advantage in discerning the law, as it does in discerning the facts, a reviewing court owes no special deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The general rules governing easements are well-known and easily stated.  The Restatement provides, "[a]n easement creates a non possessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."  Restatement (Third) of Property: Servitudes, § 1.2 (2000).  Our law is in accord.  See, e.g., Krause v. Taylor, 135 N.J. Super. 481, 484 (App. Div.

1975) ("An easement is an interest in the land of another affording a right to use the other's land"). We have recently explained that an "easement appurtenant is created when the owner of one parcel of property (the servient estate) grants rights regarding that property to the owner of an adjacent property (the dominant estate)." Rosen v. Keeler, 411 N.J. Super. 439, 450 (App. Div. 2010). The extent of the rights conveyed rests on the intent of the parties as expressed in the language creating the easement, "read as a whole and in light of the surrounding circumstances." Id. at 451.

Express "easements of way," such as the one at issue, may be further categorized as general grants of easements of way or limited grants, with the limitation referring to the purposes for which the easement may be used. Leasehold Estates, Inc. v. Fulbro Holding Co., 47 N.J. Super. 534, 551 (App. Div. 1957), certif. granted, 25 N.J. 538 (1958). We have observed that "'[i]t is not difficult to describe an unlimited easement. A mere statement that a way is "for ingress and egress" . . . or for "the purpose of passing and repassing" . . . aptly describes an easement of way without restriction.'" Id. at 556-57 (quoting Wilson v. Ford, 133 N.Y.S. 33, 40 (App. Div. 1911), rev'd on other grounds, 102 N.E. 614 (N.Y. 1913)). "Where no limitation is placed on the extent of the use of an easement of

way, it is available as a general way for all purposes to which the dominant tract might be devoted, National Silk Dyeing Co. v. Grobart, 117 N.J. Eq. 156, 165-66 (Ch. 1934); 23 William St. Corp. v. Berger, 10 N.J. Super. 216 (Ch. Div. 1950)." Id. at 551.

From this, it is obvious that Caribbean House by express easement appurtenant granted Yacht Club a general way from its otherwise landlocked tract to River Road for all purposes to which Yacht Club's property might be devoted. Accordingly, the question to be resolved must be whether the use to which Caribbean House objects, the valet parking of cars of patrons of River Palm on Yacht Club's property, with or without compensation, is a purpose to which Yacht Club's property might be devoted.

Instead of attempting to resolve that question as our cases and the Restatement advise, that is by attempting to ascertain the expressed intent of the parties from the language of the easement interpreted in light of the relevant circumstances such as "the location and character of the properties burdened and benefitted by the servitude, the use made of the properties before and after creation of the servitude, [and] the character of the surrounding area," Restatement, supra, § 4.1, comment d, the trial court chose a different path. The court, at Caribbean

House's urging, employed one of the Restatement's "default" rules "to be used where the parties have not clearly expressed their intentions or the servitude was not created by an express transaction," to resolve the extent of Yacht Club's use rights. Id. at § 4.1, Introductory Note.  In this we think the court erred.

The default rule on which the court relied is the one set forth in Section 4.11 of the Restatement, "[u]nless the terms of the servitude determined under § 4.1 provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate."  Although the provision might appear on its face as relevant to the parties' dispute, a review of its rationale as well as its application in the case law make clear that it does not apply to the situation before the court.

The Comment to Section 4.11 explains the rule's rationale

> is that use to serve other property is not within the intended purpose of the servitude.  This rule reflects the likely intent of the parties by setting an outer limit on the potential increase in use of an easement brought about by normal development of the dominant estate, permitted under the rules stated in § 4.10.  Where it applies, the rule avoids otherwise difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate.
>
> [Restatement, supra, §4.11, comment b.]

The illustrations provide examples of its intended application.

Illustrations:

1. Hotel Corporation, the owner of a five-acre parcel on which it operated a hotel, purchased a lot in Greenacres, the adjacent subdivision. An easement appurtenant to the Greenacres lot granted rights to use the Greenacres community beach and recreational facilities. In the absence of other facts or circumstances, Hotel Corporation is not entitled to use the Greenacres beach or recreational facilities for the benefit of its hotel operation.

2. Able assembled a parcel of land from Whiteacre and Brownacre, two adjoining parcels acquired from two different sellers. Whiteacre included the benefit of an appurtenant access easement over Blackacre, the adjacent property to the south. Able then built a house straddling the old boundary between Whiteacre and Brownacre. In the absence of other facts or circumstances, Able is not entitled to use the easement for access to that part of the house located on Brownacre.

[Id. at § 4.11, comment b, Illustrations 1-2.]

The Restatement comment and illustrations to Section 4.11 make clear that the rule, applied to an easement of way is intended to prevent use of the way to access a property other than the dominant, appurtenant estate. Other commentators share this view of the Restatement rule. See, e.g., 7 Thompson on Real Property § 60.04(a)(1)(ii) (Thomas ed. 2012) ("An easement can be used only in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other

property which he may then own or afterward acquire, unless so provided in the instrument by which the easement is created."). New Jersey cases apply the Restatement rule in the same fashion. See Rosen, supra, 411 N.J. Super. at 452-53 (prohibiting assignment of easement of way to the ocean by owners of dominant estate to owners of land across the street from dominant estate, citing the rule); Levinson v. Costello, 74 N.J. Super. 539, 544-47 (App. Div.) (prohibiting owner of dominant estate from permitting third parties, residing across a road from dominant estate in another development, to use easement of way to access beach shared by dominant and servient estates with all members of private beach community), certif. denied, 38 N.J. 307 (1962).

The distinction between those illustrations and cases and the situation before the court is that in this case the owner of the dominant estate, Yacht Club, is not granting use of the easement to access any property other than its own dominant, appurtenant estate. The distinction is a critical one because the rule has no application where the owner of the dominant estate is using the easement to access only the land to which the easement is appurtenant. This case is, for all practical purposes, indistinguishable from 23 William St. Corp., supra, 10 N.J. Super. at 222, in which the court rejected the claim of the owner of the servient estate that the appurtenant easement of

13                                                                    A-3857-11T1

way was being used for the benefit of premises other than the dominant estate.

The lands at issue in 23 William St. Corp., were located in the vicinity of Halsey and William Streets in Newark. Id. at 218. The servient estate fronted on William Street. Ibid. The only access from William Street to the dominant estate was via the alleyway on the servient estate. Id. at 221. The defendant, Berger, used his easement through the alleyway to access his dominant estate from William Street. Berger also owned adjacent land to the west of the dominant estate, which fronted on Halsey Street and was "entirely built upon." Id. at 220. Roth-Schlenger leased the dominant estate from Berger, which it used "for the free parking of cars of customers of the Roth-Schlenger store at the corner of William and Halsey Street, while such customers are at the store or while accessories purchased at the store are installed on their automobiles."[3] Id. at 221. The plaintiff adduced testimony that eighty or ninety cars used the alley daily. Ibid.

The deed creating the easement imposed no limitation on the extent of the use to which the right of way could be put. Id.

---

[3] The existence of this lease played no part in the court's analysis of the use of the easement except as necessary to note that Roth-Schlenger had all the same rights as Berger to the dominant estate. The court's holding was in no way dependent on the existence of the lease.

at 222.  Moreover, there was no means of direct access between the dominant estate and the Roth-Schlenger store, nor any such access between the dominant estate and Berger's remaining tract fronting on Halsey Street.  Id. at 221.  Stated another way, no one using the alleyway to access the parking lot could enter either Berger's other tract or the Roth—Schlenger store from the lot.[4]  Roth-Schlenger customers parking in the lot had to exit by way of the alley and walk along William Street to enter the store.  Ibid.  Accordingly, the court rejected the owner of the servient estate's claim that the easement was being used for the benefit of premises other than that to which it was appurtenant.

> The right of way being appurtenant to
> the property of Berger, he had a right to
> lease the dominant tenement together with
> the right of way to Roth-Schlenger, Inc.,
> who as lessee, acquired the dominant
> tenement together with the right to use it
> for any lawful purpose.
>
> In the instant case the right of way is
> used as a means of ingress to and egress
> from the dominant tenement alone, for the
> sole benefit of the dominant tenement in
> connection with a purpose to which it is
> lawfully put by the tenant thereof, namely
> the parking of vehicles. It is impossible to
> pass beyond the dominant tenement to the
> premises occupied by Roth-Schlenger, Inc.,

---

[4] The opinion includes a diagram at page 219 in the bound volume which is not available in the on-line version of the case.  23 William St. Corp., supra, 10 N.J. Super. at 219.

> without repassing over the right of way and along a public street.

[_Id._ at 223.]

Because the cars using the right of way did so only to access the dominant estate, the use was found to be for the sole benefit of the dominant estate, notwithstanding that the parking lot was provided as a courtesy to customers of the Roth-Schlenger store located on a third property. Similarly here, River Palm's valet service is using the easement to access only Yacht Club's property for a purpose to which the Club's property is properly put, that is, parking. Thus the benefit is solely to Yacht Club's property, notwithstanding the convenience the arrangement provides to patrons of River Palm. Because the easements, both here and in 23 William St. Corp., were used to access only the dominant estate and no other property, they cannot be accurately characterized as being used for the benefit of lands other than those to which they are appurtenant.

The mistaken application of the default provision of Section 4.1 had the effect of rewriting the terms of the easement to include a limitation not found in the document, in the trial court's words, to uses "serving or benefiting the Club." That implied limitation greatly restricts the uses to which Yacht Club might make of its property, and led to its efforts to create a "benefit" to itself by monetizing its

A-3857-11T1

courtesy to Campbell by charging River Palm a monthly fee.[5]   No such machinations are necessary in order for Yacht Club to invite River Palm's valet service onto the Club's property to park cars belonging to patrons of River Palm.  The easement granted to Yacht Club by Caribbean House was unlimited, and thus is a general way for all purposes to which the Club's property might be devoted.

As Caribbean House does not contend that the parking of vehicles on Yacht Club's property constitutes an impermissible use or that the number of cars using the easement has unreasonably increased the burden on Caribbean House's servient estate (neither likely given the commercial nature of both parcels and that the Club's parking area can accommodate over one hundred and fifty cars) the trial court erred in restraining Yacht Club's use of the easement.  Because we hold that Yacht Club's invitation of River Palm's valet service onto the Club's property to park cars belonging to patrons of River Palm, with or without compensation to the Club, is within the scope of its easement, we need not consider the effect of the lease agreement between Yacht Club and River Palm.

---

[5] We share the trial court's view that the arrangement was not an effort by Yacht Club to evade the court's order, but rather a good faith attempt to make lawful use of its property within the confines of the court's directive.

Finally, we note that Caribbean House alleged before the trial court that River Palm's valet drivers traversed the easement at excessive speeds. Yacht Club and River Palm denied the allegation and the trial court did not reach the issue in light of its disposition of the case. In the event the parties cannot come to agreement on the safe use of the easement, our disposition of the appeal should not be read as precluding a new application to the trial court for resolution of that issue.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION