**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5303-16T3

CONGREGATION SONS OF
ISRAEL,

    Plaintiff-Respondent,

v.

CONGREGATION
MEOROSNOSSON, INC.,

    Defendant-Appellant.

_____

Argued May 20, 2019 – Decided June 25, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000239-12.

Ronald S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, and R.C. Shea and Associates, attorneys; Ronald S. Gasiorowski, on the briefs).

Andrew J. Kelly argued the cause for respondent (The Kelly Firm, PC, attorneys; Andrew J. Kelly, of counsel; Chryssa Yaccarino, on the brief).

PER CURIAM

Congregation Meorosnosson, Inc. (defendant) appeals from an order granting Congregation Sons of Israel (plaintiff) partial summary judgment establishing that plaintiff has a permanent easement for parking on defendant's property. Defendant also appeals from an order denying reconsideration, a judgment establishing a priority parking right, and an order imposing sanctions. We reverse the order granting partial summary judgment due to genuine issues of material fact, and vacate all other orders under review. We therefore remand for further proceedings.

In 1963, plaintiff and the Jewish Center and Hebrew Day School of Lakewood (Hebrew Day), defendant's predecessor, executed an agreement (the 1963 agreement), which stated, in part, that Hebrew Day agreed to permit plaintiff to utilize vacant lands that it owned for parking purposes and to use other parts of the land for a boiler room and a water cooling tower. On appeal, and as to the grant of partial summary judgment to plaintiff, defendant contends that the 1963 agreement is ambiguous. Defendant maintains that the 1963 agreement creates, at best, a license for parking – rather than a perpetual easement – that subsequently terminated. As to its parking argument, defendant contends that there was no municipal land use approval for a parking easement;

and a 1972 site plan approval for the expansion of the school property omitted joint parking use, inferentially precluded such use, and superseded any such parking right by plaintiff.[1]

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We consider the facts in a light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

In late 1962, Hebrew Day executed a deed conveying part of its property to plaintiff. In early 1963, Hebrew Day and plaintiff agreed that plaintiff would use the land to erect a sanctuary, chapel, social hall, offices, library, and other rooms. Plaintiff complied by building a synagogue. Paragraph ten of the 1963 agreement stated:

---

[1] Defendant makes multiple other arguments pertaining to the other orders, but we need not reach those contentions because we have reversed partial summary judgment necessitating the vacation of those orders.

> [Hebrew Day] agrees to permit [plaintiff] to utilize for parking purposes the vacant lands it owns on Madison Avenue and also on Sixth Street and to permit use of lands on Sixth Street for boiler room use and for a water cooling tower.

The parties did not record the 1963 agreement. In 1972, Hebrew Day and plaintiff executed a document stating:

> In appreciation of the many considerations extended by [plaintiff] to [Hebrew Day] through all the years, primarily the use of its facilities without charge; the Officers of [Hebrew Day] are pleased to advise that [plaintiff] or any of its affiliates may use the facilities of the Day School, present and future, on the same cooperative basis, without charge.

In September 1972, Hebrew Day notified plaintiff of "an appeal for a variance" to the Township of Lakewood so that it could construct "an addition to an existing school with insufficient parking, insufficient side lines and exceeding the maximum lot coverage." In November 1972, Lakewood approved the variance, stating: "[A]lthough evidence presented indicates parking provisions to be less than those required pursuant to the existing ordinance, the applicant will have the benefit of parking facilities on adjoining properties owned by [plaintiff] should additional parking facilities be required." In June 2007, the Ocean County clerk's office recorded the 1963 agreement, allowing plaintiff to park on defendant's property, use a boiler room, and use a water cooling tower.

In 2008, Hebrew Day filed for bankruptcy. In August 2010, the bankruptcy court authorized the sale of the Hebrew Day property to defendant.

Resolution of the issues pertaining to the order granting partial summary judgment requires that we not only apply a de novo standard of review, but that we employ legal principles related to easements and licenses. We briefly outline that well-settled law.

The interpretation of a contract – like the 1963 agreement – "is usually a legal question for the court, but where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000). "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991).

Ordinarily "[p]erpetual contractual performance is not favored in the law and is to be avoided unless there is a clear manifestation that the parties intended it." In re Estate of Miller, 90 N.J. 210, 218 (1982). Even when a contract requires continuing performance, it may be interpreted as requiring "performance for a reasonable time, or until terminated by a reasonable notice."

Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 30 (1958). As the Court has stated, "if a contract contains no express terms as to its duration, it is terminable at will or after a reasonable time." Miller, 90 N.J. at 219.

"[A]n easement is defined as a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder of the easement to make some use of the other's property." Leach v. Anderl, 218 N.J. Super. 18, 24 (App. Div. 1987). The existence of an easement "obligates the possessor not to interfere with the uses authorized by the easement." Caribbean House, Inc. v. N. Hudson Yacht Club, 434 N.J. Super. 220, 226 (App. Div. 2013) (quoting Restatement (Third) of Prop.: Servitudes, § 1.2 (Am. Law Inst. 2000)). "The proponent of the easement must establish the elements by the preponderance of the evidence." Yellen v. Kassin, 416 N.J. Super. 113, 120 (App. Div. 2010). "No particular words are necessary to constitute the grant of an easement; any words which clearly show the intention to give an easement are sufficient to effect that purpose, provided the language is certain and definite in its terms." Borough of Princeton v. Bd. of Chosen Freeholders, 333 N.J. Super. 310, 324 (App. Div. 2000).

"[W]hen there is any ambiguity or uncertainty about an easement grant, the surrounding circumstances, including the physical conditions and character

6

of the servient tenement, and the requirements of the grantee, play a significant role in the determination of the controlling intent." Khalil v. Motwani, 376 N.J. Super. 496, 503 (App. Div. 2005) (quoting Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957)). "[T]he intent of the conveyor [of an easement] is normally determined by the language of the conveyance read as an entirety and in the light of the surrounding circumstances." Hammett v. Rosensohn, 26 N.J. 415, 423 (1958).

"Questions concerning the extent of the rights conveyed by an easement require a determination of the intent of the parties as expressed through the instrument creating the easement, read as a whole and in light of the surrounding circumstances." Rosen v. Keeler, 411 N.J. Super. 439, 451 (App. Div. 2010). An easement may "be created for a fixed term or for the accomplishment of a specific purpose," although the "extent of the easement created by a conveyance is fixed by the conveyance." Eggleston v. Fox, 96 N.J. Super. 142, 147 (App. Div. 1967). An intent for an easement to expire may be expressed "by any appropriate words," but is "usually manifested by a limitation which contains the words, 'so long as,' 'until' or 'during,' or a provision that upon the happening of a stated event" the interest will expire. Id. at 146-47.

An easement is subject to modification or termination by agreement of the parties or as a result of "abandonment, prescription, merger, or estoppel." Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333, 345 (App. Div. 2015). However, "[o]nly the holder of the easement is able to unilaterally terminate an easement through renunciation." Ibid. Further,

> to establish the abandonment of an easement, the party asserting such abandonment must present clear and convincing evidence of an intention on the part of the owner to abandon the easement or must prove conduct on the part of the owner of the servient tenement adverse to and defiant of the easement and which conduct acquiesced in by the owner of the easement was the cause of the non-user. In the absence of facts which could give rise to an equitable estoppel, the conduct and acts adverse to the easement must have continued uninterrupted for the full period of [twenty] years.
>
> [Fairclough v. Baumgartner, 8 N.J. 187, 189-90 (1951).]

A license is an interest in land with "less than an exclusivity of possession." Kearny v. Mun. Sanitary Landfill Auth., 143 N.J. Super. 449, 456 (Law Div. 1976). "A license confers authority to go upon the land of another and do an act or series of acts there, but it does not give rise to an estate in land." Ibid. "[A] license is an agreement that only gives permission to use the land at the owner's discretion." Van Horn, 442 N.J. Super. at 341. "A license is simply a personal privilege to use the land of another in some specific way or for some

8

particular purpose or act."  Twp. of Sandyston v. Angerman, 134 N.J. Super. 448, 451 (App. Div. 1975).

A license is "usually freely revocable at the owner's pleasure," is limited in scope by the granting agreement, and terminates at the death of either party. Van Horn, 442 N.J. Super. at 341.  A license is also subject to revocation "by a conveyance of the land upon which it was intended to operate." Kiernan v. Kara, 7 N.J. Super. 600, 603 (Ch. Div. 1950).  A license "becomes irrevocable if the licensee expends substantial sums of money pursuing the privilege while the licensor acquiesces to the expenditures, or if permitting revocation would permit the licensor to practice a fraud on the licensee . . . ." Van Horn, 442 N.J. Super. at 342.

A determinable interest is one "which automatically expires upon the occurrence of a stated event." U.S. Trust Co. of N.Y. v. State, 226 N.J. Super. 8, 12 (App. Div. 1988).  "Generally, the intent to create a determinable fee is found in the use of the words of limitation, such as 'while,' 'during,' and 'so long as.'  Particular language, however, is not determinative." Id. at 12-13.

In Miller, 90 N.J. at 218, the court addressed documents granting an interest in royalties that did not specify how long the interest extended.  Because of the ambiguity, the trial court was tasked with determining "the intent of the

parties in the context of well-settled principles of law." Ibid. The record was devoid of any "clear manifestation" of an intent for the interest to last in perpetuity when such performance is disfavored. Ibid. In contrast, the parties' conduct could be interpreted to establish the intent that performance would not continue in perpetuity when the interest was expressed as a conveyance on a year to year basis. Id. at 218-19. After concluding that the payments were not intended to continue forever, the court addressed the appropriate duration for the interest under the facts of the case and concluded that the interest ended after fifteen years. Id. at 219.

We conclude that there remain issues of material fact as to whether an easement was created by the 1963 agreement. And if an easement was established, there remain issues of material fact as to whether the easement is perpetual. Finally, even if a perpetual easement had been established, there remain issues of material fact as to whether the easement was subsequently terminated.

The language in paragraph ten of the 1963 agreement does not definitively establish an easement. Although the term "easement" need not be included, the term "permission" is ambiguous as to whether the interest may be something other than an exclusive grant. In addition, consideration of the surrounding

circumstances leaves doubt as to whether an easement was intended. Paragraph ten of the 1963 agreement does not include language establishing either that permission to use the property for parking is perpetual or that it is limited to the original two contracting parties. These fact issues preclude summary judgment.

Other paragraphs of the 1963 agreement specifically use terms indicating perpetual performance. For example, the synagogue "shall perpetually be maintained in accordance with Orthodox Jewish tenets and not otherwise." And the new synagogue was forbidden from holding religious services without men and women separated. Another paragraph requires that "[n]o other tribunal or authority shall ever be called upon to decide disputes as to matters of Jewish law, ritual and worship" other than those specifically listed. In contrast, other portions of the agreement are specifically limited to Hebrew Day, including plaintiff's obligation to pay Hebrew Day $10,000 yearly so long as Hebrew Day continues to operate the school, and the provision giving Hebrew Day membership on plaintiff's board. Paragraph ten does not include language establishing a right in perpetuity nor does it include language limiting performance to Hebrew Day when the drafters demonstrated they were capable of making these distinctions. The judge inferred that the easement would continue for as long as the lot is used as a synagogue based on "the formality of

11

the agreement."  But such an inference is inappropriate on summary judgment, because significant ambiguity remains.

Even if a perpetual easement was established by the 1963 agreement, an issue of material fact remains as to whether it has been abandoned.  Under Fairclough, 8 N.J. at 189, abandonment may be established either by "clear and convincing evidence" that the owner abandoned the easement or by "conduct on the part of the owner of the servient tenement adverse to and defiant of the easement and which conduct acquiesced in by the owner of the easement . . . ."  Defendant contends that the Sixth Street lot has long been used for children to enter the school and to play and that it has only recently been used for parking.  In contrast, plaintiff asserts that the lot has long been used for parking.  Thus, there remains an issue of material fact as to whether plaintiff abandoned the easement by acquiescing to its use by the school children.

The duration for the grant in paragraph ten is unspecified, and there is no "clear manifestation that the parties intended" perpetual performance.  It is also unclear whether a different type of interest may have been intended.  Because the 1963 agreement is ambiguous, surrounding circumstances may be addressed.  There remain genuine issues of material fact as to what type of property right was conveyed and whether it was abandoned.  Thus, partial summary judgment

12

should be reversed and the case remanded for trial to determine what interest was created, its scope, and whether it remains in effect. As such, we vacate all of the other orders under review.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5303-16T3